772 A.2d 1225

**Garnell GRAVES**

v.

**STATE of Maryland.**

**No. 84, Sept. Term, 2000.**

Court of Appeals of Maryland.

June 4, 2001.

Claudia A. Cortese, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief) Baltimore, for petitioner.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief) Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

BATTAGLIA, Judge.

We are called upon in this case to determine whether a conviction in another state of a "sexually violent offense" may be used as the predicate to establish that a person is a "sexually violent predator" under Maryland's Registration of Offenders statute as set forth in Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.) Article 27, § 792.[1] For the reasons set forth below, we hold that the statutory definition of a "sexually violent predator" does not encompass persons who have been convicted of criminal acts committed in another jurisdiction that would constitute a sexually violent offense in Maryland.

---

1. Unless otherwise specified, all statutory citations herein are to Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.), Article 27.

**332**

## I. Facts

On October 30, 1991, appellant Garnell Graves was arrested in the District of Columbia based on charges of carnal knowledge and indecent acts on a minor, pursuant to D.C.Code Ann. § 22–3501 (1994)(Repealed May 23, 1995, D.C. Law 10–257, § 501(b)).[2] The charges filed against Graves alleged that he had taken criminal and improper liberties with a ten year old child. The victim, Graves's ten year old daughter, had reported to a social worker that between August 17 and August 30, 1991, Graves entered her bedroom at night in his apartment in the District of Columbia, where he engaged in vaginal intercourse with her. Graves pled guilty to the charge of indecent acts on a minor and was sentenced in 1992 to a term of two to six years imprisonment. Graves served four years in the Lorton Prison of the District of Columbia Department of Corrections, and he was paroled on May 1, 1996.

Following his release from Lorton and prior to the expiration of his parole term, Graves began residing with Leslie

---

**2.** Section 22–3501 of the D.C.Code, as it existed at the time of Graves's arrest, stated as follows:

(a) Any person who shall take, or attempt to take any immoral, improper, or indecent liberties with any child of either sex, under the age of 16 years with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of such person or of such child, or of both such person and such child, or who shall commit, or attempt to commit, any lewd or lascivious act upon or with the body, or any part or member thereof, of such child, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires, either of such person or of such child, or of both such person and such child shall be imprisoned in a penitentiary, not more than 10 years.

(b) Any such person who shall, in the District of Columbia, take any such child or shall entice, allure, or persuade any such child, to any place whatever for the purpose either of taking any such immoral, improper, or indecent liberties with such child, with said intent or of committing any such lewd, or lascivious act upon or with the body, or any part or member thereof, of such child with said intent, shall be imprisoned in the penitentiary not more than 5 years.

(c) Consent by a child to any act or conduct prescribed by subsection (a) or (b) of this section shall not be a defense, nor shall lack of knowledge of the child's age be a defense.

(d) The provisions of this section shall not apply to the offenses covered by § 22–3502 or by § 22–2801.

Horton and her eight-year old sister in an apartment in Suitland, Maryland. The younger sister subsequently reported that Graves forced her to have vaginal intercourse with him on approximately eighteen occasions in 1997. A Prince George's County Grand Jury indicted Graves, charging him with child abuse in violation of Article 27, § 35C,[3] second degree rape in violation of § 463,[4] and third degree sex offense in violation of § 464B.[5]

---

**3.** Section 35C provides in relevant part as follows:

(a)(2) "Abuse" means: ...

(ii) Sexual abuse of a child, whether physical injuries are sustained or not.

(3) "Child" means any individual under the age of 18 years....

(5) "Household member" means a person who lives with or is a regular presence in a home of a child at the time of the alleged abuse.

(6)(i) "Sexual abuse" means any act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member.

(ii) "Sexual abuse" includes, but is not limited to:

1. Incest, rape, or sexual offense in any degree;
2. Sodomy; and
3. Unnatural or perverted sexual practices.

(b) *Violation constitutes felony; penalty; sentencing.*—(1) A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child or a household or family member who causes abuse to the child is guilty of a felony and on conviction is subject to imprisonment in the penitentiary for not more than 15 years....

(3) The sentence imposed under this section may be imposed separate from and consecutive to or concurrent with a sentence for any offense based upon the act or acts establishing the abuse.

**4.** Section 463 provides in relevant part as follows:

(a) *Elements of offense.*—A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person: ...

(3) Who is under 14 years of age and the person performing the act is at least four years older than the victim.

(b) *Penalty.*—Any person violating the provisions of this section is guilty of a felony and upon conviction is subject to imprisonment for a period of not more than 20 years.

**5.** Section 464B provides in relevant part as follows:

(a) *Elements of offense.*—A person is guilty of a sexual offense in the third degree if the person engages in:

On June 23, 1998, the State filed a notice of intent to request the trial court to determine before sentencing whether defendant was a sexually violent predator pursuant to § 792(b)(4) [6] by virtue of his prior conviction for indecent acts on a minor in the District of Columbia. On October 27, 1998, after the jury had been empaneled, Graves entered an *Alford* plea [7] to count three of the indictment which charged him with a third degree sexual offense in violàtion of Article 27, § 464B.

---

(1) Sexual contact with another person against the will and without the consent of the other person, and:

(i) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or

(ii) Inflicts suffocation, strangulation, disfigurement or serious physical injury upon the other person or upon anyone else in the course of committing that offense; or

(iii) Threatens or places the victim in fear that the victim or any person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

(iv) Commits the offense aided and abetted by one or more other persons; or ...

(3) Sexual contact with another person who is under 14 years of age and the person performing the sexual contact is four or more years older than the victim; ...

(b) *Penalty.*—Any person violating the provisions of this section is guilty of a felony and upon conviction is subject to imprisonment for a period of not more than 10 years.

6. Section 792(b)(4) provides that "The State's Attorney may not request a court to determine if a person is a sexually violent predator under this section unless the State's Attorney serves written notice of intent to make the request on the defendant or the defendant's lawyer at least 30 days before trial."

7. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In *Alford,* the Supreme Court considered the validity of a guilty plea entered by the defendant where the defendant pled guilty to second-degree murder to avoid trial on a charge of first-degree murder which carried a potential death sentence. 400 U.S. at 31, 91 S.Ct. at 164, 27 L.Ed.2d at 168. Although Alford pled guilty, he maintained throughout sentencing that he did not commit the crime. *Id.* In concluding that Alford's guilty plea was valid, the Court stated "while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his

On November 20, 1998, the sentencing judge in the Circuit Court for Prince George's County was called upon to determine whether Graves was a sexually violent predator based in part on Graves's 1992 conviction for indecent acts on a minor in the District of Columbia. After reviewing the Pre Sentence Investigation Report, hearing arguments of both counsel and Graves's allocution, the trial court stated:

I'm going to accept the definition that the Legislature provided for sexual and violent offenses. A sexually violent predator is somebody who commits two or more sexually violent offenses. And under the definition of a sexually violent offense, they included a violation of 462, 463, 464(a), 464(b) and 467(f).

So there is nothing anywhere that requires the violence that you are talking—that you seem to imply was included in that definition. Particularly when we know like we have before us today a violation of 464(b) can be any contact and sexual contact.

And I believe that your client under the charge of indecent acts to a minor in the District of Columbia would—the equivalent charge in this case would be in fact 464(b). So, I believe he has in fact committed a subsequent offense and is in fact comes [sic] under the definition. And I find him in fact to be a sexually violent predator under the statute.

The trial court sentenced Graves to ten years imprisonment on the third degree sex offense count, with all but seven years suspended, credit for time served of 238 days, and a five year parole period with supervision. The sentencing judge emphasized the repetitive nature of Graves's crime to support the sentence imposed.

On February 18, 1999, Graves filed a Motion for Modification and Reduction of Sentence, wherein he asserted that the trial court improperly considered his 1991 out-of-state conviction as a basis for finding him to be a sexually violent predator

---

participation in the acts constituting the crime." *Id.* at 37, 91 S.Ct. at 167, 27 L.Ed.2d at 171.

under § 792(a)(11), as well as unnecessarily exceeding the sentencing guidelines for third degree sex offense in imposing the maximum penalty, a ten year sentence. On March 10, 1999, the sentencing judge entered an order denying the modification or reduction of Graves's sentence.

The Court of Special Appeals affirmed the trial court's determination that Graves was a sexually violent predator under § 792 and upheld the sentence imposed. In affirming the trial court's decision, the Court of Special Appeals held that "out-of-state convictions may be considered in determining whether an individual is a sexually violent predator." *Graves v. State*, 133 Md.App. 97, 114, 754 A.2d 493, 502 (2000). In so doing, the Court of Special Appeals recognized that the statutory section concerning sexually violent predators specifically excluded reference to out-of-state convictions, but reasoned:

> It is clear that the legislature intended a broad and sweeping registration of sexual offenders. In addition, a sexually violent predator is, in essence, a sexually violent offender who has committed a second sexually violent offense and who has been determined to be at risk of committing a subsequent sexually violent offense. Accordingly, we decline to read the statute as prohibiting a sentencing court from considering out-of-state convictions when it determines if an individual is a sexually violent predator.

*Id.* at 114, 754 A.2d at 503.

## II. Discussion

The Maryland Legislature enacted Article 27, § 792 entitled "Registration of Offenders" pursuant to the requirements of the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program enacted by the United States Congress as part of the Violent Crime Control and Law Enforcement Act of 1994. Pub.L. No. 103–322, 108 Stat. 1796 (1994), codified at 42 U.S.C. § 14071 (1995).[8] The Maryland

---

8. The Wetterling Act was developed in response to national pressure to address "crimes of violence and molestation committed against chil-

statute, which was originally entitled "The Maryland Crimes Against Children and Sexual Offender Registration Law," was enacted as Chapter 142, of the 1995 Laws of Maryland. *See* Gregory G. Gillette, *The Maryland Survey: 1994–1995: Recent Development: The Maryland General Assembly: Criminal Law*, 55 Md. L.Rev. 847, 852–856 (1996). The 1995 Act provided for sexual offenders, upon release from prison, to notify local law enforcement of his/her presence in the county where he/she intended to live. The statute defined a "child sexual offender" as someone who:

(2)(i) Has been convicted of violating § 35C of this article for an offense involving sexual abuse;

(ii) Has been convicted of violating any of the provisions of §§ 462 through 464B of this article for an offense involving an individual under the age of 15 years;

---

dren in the United States" following the abduction of eleven-year-old Jacob Wetterling in St. Joseph, Minnesota. H.R.Rep. No. 103–392, at 3 (1993). The Wetterling Act established guidelines for registering sex offenders and providing notification for persons convicted of sexually violent offenses or criminal offenses against minors, or who were determined to be sexually violent predators. *See* 42 U.S.C. § 14071. Each state had until September 13, 1997, to enact legislation implementing a sex offender registration statute in accordance with the guidelines set forth in the Federal Act, or risk losing federal funding apportioned to the states for crime fighting programs. *See* 42 U.S.C. § 14071(g); H.R. Rep. No. 104–555, at 2 (1996). As originally enacted in 1994, § 14071 left states with the discretion as to whether disclosure of registrant information to the public was warranted. *See generally,* Caroline Louise Lewis, *The Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act*, 31 Harv. C.R.—C.L. L.Rev. 89 (1996).

On July 29, 1994, thirty-two year old Jesse Timmendequas, a convicted child sex offender, sexually assaulted and murdered his seven year-old neighbor, Megan Kanka. *See State v. Timmendequas*, 161 N.J. 515, 737 A.2d 55 (1999). The public outrage associated with the murder of Megan Kanka prompted the states and the federal government to re-examine the structure of their respective sex offender registration statutes. Congress responded by amending the Wetterling Act in May 1996, renaming it Megan's Law, to require the states to add language to their statutes mandating the release of relevant sex offender registrant information necessary to protect the public. *See* H.R. 2137, 104th Cong. (1996), reprinted in 110 Stat. 1345 (1996). Presently, all fifty states have adopted some form of sex offender registration laws or established community notification programs.

**338**

(iii) Has been granted probation before judgment after being found guilty of any of the offenses listed in items (i) and (ii) of this paragraph and has been ordered by the court, as a condition of probation, to comply with the requirements of this section;

(iv) Has been convicted of, or granted probation before judgment after being found guilty of, violating § 464C of this article and has been ordered by the court, as a part of a sentence or condition of probation, to comply with the requirements of this section;

(v) Has been found not criminally responsible for any of the offenses listed in items (i) and (ii) of this section; or

(vi) Has been convicted in another state of an offense that, if committed in this state, would constitute one of the offenses listed in items (i) and (ii) of this paragraph.

Article 27, § 692B (1975, 1992 Repl.Vol., 1995 Supp.).

 In 1997, the General Assembly enacted a more expansive sexual offender registration statute which complied with the 1996 amendments to the Federal Wetterling Act, and established additional classifications of offenders subject to the statutory registration requirements. The provisions of the 1995 Act were incorporated and reworked into the 1997 law, as codified in Art. 27, § 792. The 1997 version of § 792, which originated as Senate Bill 605, passed by an unanimous vote of the Senate's Judicial Proceedings Committee on March 20, 1997. The final version of Senate Bill 605 was approved on May 22, 1997, and went into effect on October 1, 1997. *See* 1997 Md. Laws, ch. 754.[9] This version was the Maryland

---

9. The Registration of Sexual Offenders Act has been subsequently amended by Chapters 473 and 521, Acts 1998; Chapters 317 and 402, Acts 1999; and Chapter 314, Acts 2000. The effects of these amendments, however, do not change the substance of the provisions under consideration in Graves's appeal before this Court.

sexual offender registration law in effect at the time of Graves's conviction for third degree sexual offense in 1998.[10]

10. The Prince George's County Grand Jury indictment charged Graves with criminal acts committed from a period of January 1, 1997 to December 31, 1997. The State never provided any specific dates during 1997 in which the criminal events allegedly took place. The amendments to the Registration of Sexual Offenders statute which created the classifications of "sexually violent predator" and "sexually violent offense" requiring enhanced registration for those individuals found by the trial court to be sexually violent predators did not take effect until October 1, 1997. Thus, from the facts contained in the record in this case it is impossible to determine which of the criminal acts Graves was charged with took place prior to the statutory amendments, and which acts took place after the amendments went into effect. Ordinarily, a criminal defendant will not be entitled to a windfall from the amendment, revision, or repealing of a statute where the legislature altered the statute during the course of the litigation. *See State v. Johnson,* 285 Md. 339, 346, 402 A.2d 876, 880 (1979). Unless a statute specifically states an intent to the contrary, the provisions of Maryland's general savings clause, Code (1957, 1998 Repl.Vol.) Article 1, § 3, operate to uphold "any penalty, forfeiture or liability incurred under a statute which is subsequently repealed or amended." *See id.* at 345, 402 A.2d at 879. The general savings clause provides as follows:

> The repeal, or the repeal and reenactment, or the revision, amendment or consolidation of any statute, or of any section or part of a section of any statute, civil or criminal, shall not have the effect to release, extinguish, alter, modify or change, in whole or in part, any penalty, forfeiture or liability, either civil or criminal, which shall have been incurred under such statute, section or part thereof, unless the repealing, repealing and reenacting, revising, amending or consolidating act shall expressly so provide; and such statute, section or part thereof, so repealed, repealed and reenacted, revised, amended or consolidated, shall be treated and held as still remaining in force for the purpose of sustaining any and all proper actions, suits, proceedings or prosecutions, civil or criminal, for the enforcement of such penalty, forfeiture or liability, as well as for the purpose of sustaining any judgment, decree or order which can or may be rendered, entered or made in such actions, suits, proceedings or prosecutions imposing, inflicting or declaring such penalty, forfeiture or liability.

Code (1957, 1998 Repl.Vol.) Article 1, § 3. Where the effective date of a statute abrogating a prior statutory or common law provision falls within a window of time during which an alleged criminal offense took place, the State must prove that the conduct complained of actually took place during the appropriate period of time, either pre- or post-effective date of the statute depending on the facts and circumstances of the conduct and statutory provisions which the State seeks to invoke

**340**

The definition of "child sexual offender" contained in § 792(a)(2) of the 1997 version of the statute retains its reference to individuals who had been convicted in other jurisdictions of offenses comparable to the Maryland crimes enumerated in the statute. In addition to child sexual offenders, the registration provisions of § 792 apply to offenders, sexually violent offenders, and sexually violent predators. Article 27, § 792(a)(6) of the Maryland Code defines "offender" by stating:

(6) "Offender" means a person who is ordered by the court to register under this section and who:

(i) Has been convicted of violating § 1, § 2, or § 338 of this article;

(ii) Has been convicted of violating § 337 of this article if the victim is under the age of 18 years;

(iii) Has been convicted of the common law crime of false imprisonment if the victim is under the age of 18 years and the offender is not the victims' parent;

(iv) Has been convicted of violating § 464C of this article if the victim is under the age of 18 years;

(v) Has been convicted of soliciting a minor to engage in sexual conduct;

(vi) Has been convicted of violating § 419A of this article;

(vii) Has been convicted of violating § 15 of this article or any of the provisions of §§ 426 through 433 of this

through prosecution. *See Robinson v. State*, 353 Md. 683, 701–02, 728 A.2d 698, 706–07 (1999).

Neither Graves nor the State has challenged the applicability of the 1997 statute to the case now before this Court. Therefore, while we are confronted with a factual situation in which the State has not proven on the record whether the acts constituting third degree sexual offense under § 464B to which Graves pled guilty took place before or after the October 1, 1997 effective date of the Registration of Offenders statute, we will treat the terms of the 1997 statute as controlling on the issue of registration applicable to Graves's 1998 guilty plea for third degree sexual offense.

article if the intended prostitute is under the age of 18 years;

(viii) Has been convicted of a crime that involves conduct that by its nature is a sexual offense against an individual under the age of 18 years;

(ix) Has been convicted of an attempt to commit a crime listed in items (i) through (viii) of this paragraph; or

(x) Has been convicted in another state of an offense that, if committed in this State, would constitute one of the offenses listed in items (i) through (ix) of this paragraph.

A "sexually violent offender" is defined in Article 27, § 792(a)(10) as a person who:

(i) Has been convicted of a sexually violent offense;

(ii) Has been convicted of an attempt to commit a sexually violent offense; or

(iii) Has been convicted in another state of an offense that, if committed in this State, would constitute a sexually violent offense.

Section 792(a)(11) defines a "sexually violent predator" as a person who:

(i) Is convicted of a second or subsequent sexually violent offense;

(ii) Has been determined in accordance with this section to be at risk of committing a subsequent sexually violent offense.

The statute defines a "sexually violent offense" as:

(i) A violation of any of the provisions of § 462, § 463, § 464, § 464A, § 464B, or § 464F of this article; or

(ii) Assault with intent to commit rape in the first or second degree or a sexual offense in the first or second

degree as previously proscribed under former § 12 of this article.

Article 27, § 792(a)(9).

■ Under the statutory framework, classification as a sexually violent predator requires the trial court to engage in a two-step analysis. *See* § 792(b)(1). The statute states that "if a person is convicted of a second or subsequent sexually violent offense, the State's Attorney may request the court to determine before sentencing whether the person is a sexually violent predator." § 792(b)(1). This language mirrors the language of § 792(a)(11)(i) which also limits consideration of status as a sexually violent predator to those cases where the individual in question has committed more than one sexually violent offense. To determine whether the accused has committed more than one sexually violent offense, the trial court must look to the language of § 792(a)(9), which establishes the criminal offenses designated as sexually violent under Maryland law. Once the trial court has made a finding that the accused has committed more than one sexually violent offense, it may proceed to the second step of its analysis, which requires the trial court to evaluate whether the person is at risk for committing additional sexually violent offenses. *See* § 792(a)(11)(ii). Section 792(b)(3) provides as follows:

In making a determination under paragraph (1) of this subsection, the court shall consider:

(i) Any evidence that the court considers appropriate to the determination of whether the individual is a sexually violent predator, including the presentencing investigation and sexually violent offender's inmate record;

(ii) Any evidence introduced by the person convicted; and

(iii) At the request of the State's Attorney, any evidence presented by a victim of the sexually violent offense.

Once the trial court has concluded that a person qualifies as a sexually violent predator, that person will be subject to the registration requirements attendant to such classification.

The statute, effective in 1997, requires registrants who are residents of Maryland at the time they are released, receive probation, or sentenced in cases where the sentence does not include imprisonment, to register no later than the time of release, probation, or sentencing. *See* § 792(c)(2)(i). Registrants who are not residents of Maryland must register within seven days of establishing a temporary or permanent residence in Maryland or applying for a Maryland driver's license. *See* § 792(c)(2)(ii). Individuals classified as child sexual offenders also must register in person with the local law enforcement agency of the county in which they reside. *See* § 792(c)(3). The registrant must provide the supervising authority with a signed statement which includes the individual's name including any aliases used, address, place of employment, social security number, and a description and the location of the criminal conduct which brings them within the purview of the sex offender registration statute. *See* § 792(d)(1).

The Department of Public Safety and Correctional Services maintains a central registry containing the signed statement as well as photographs and fingerprints of the registrant. *See* § 792(d)(3). All information maintained by the Department of Public Safety and Correctional Services is also forwarded to the Federal Bureau of Investigation for its national database of sex offenders. *See* § 792(d)(4).

The duration of an individual's registration period varies with that person's classification under the statute. Sexual offenders and sexually violent offenders must register annually for a ten year period. *See* § 792(h)(3). Those individuals found to be sexually violent predators are required to register every ninety days for a ten year period. *See* § 792(h)(4). After the sexually violent predator has registered quarterly for a minimum of ten years, a petition may be filed with the court requesting a termination of that status as a sexually violent predator. *See* § 792(k). Therefore, while it is possible to petition a court to have the sexually violent predator status removed, the registration period accorded to individuals who

**344**

are classified as sexually violent predators is of a potentially infinite duration.

When Congress designed the Wetterling Act, it afforded the states wide latitude in fashioning their sex offender registration statutes and the criteria for which a person may be classified as a sexually violent predator. *See* Final Guidelines for the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, as Amended, 64 Fed. Reg. 572 (1999). As a result, the various state sex offender registration statutes take different approaches in setting forth the rules and requirements of registration. The majority of states use language which refers to comparable criminal acts committed in other jurisdictions when defining which individuals are subject to the registration requirements as sexual offenders and sexually violent predators, as well as in defining the meaning of a sexually violent offense.[11] The remaining

---

11. The following states refer to out-of state convictions in their definitions of sexual offense, sexual offender, sexually violent offense and/or sexually violent predator: Alaska Stat. §§ 12.63.010 to –100, 18.65.087 (Lexis 2000); Ark.Code Ann. §§ 12–12–901 to –920 (Lexis 1999); Del. Code Ann. tit. 11, § 4120 (2000); Fla.Stat.Ann. §§ 775.21, 944.606 (West 2001); Haw.Rev.Stat. § 846E(1999); 730 Ill. Comp. Stat. Ann. 15% to /12, 725 Ill.Comp.Stat. Ann. 205/0.01 (West 2000); Ind.Code Ann. §§ 5–2–12–1 to –13 (Michie 2000); Iowa Code Ann. § 692A (West 2001); Kan.Stat.Ann. §§ 22–4901 to –4910 (2000); Ky.Rev.Stat.Ann. §§ 17.500–.540 (Michie 2000); La.Rev.Stat.Ann. §§ 15:540–549 (West 2001); Me.Rev.Stat.Ann. tit. 34 A §§ 11201–11252 (West 2000); Mass. Ann.Laws Ch. 6, §§ 178C–178O (Lexis 2001); Miss.Code Ann. §§ 45–33–1 to –19 (2000); Mont.Code Ann. §§ 46–23–501–512 (1999); Nev. Rev.Stat.Ann. §§ 179B–179D (Michie 1999 Supp.); N.H.Rev.Stat.Ann. § 651–B (2000); N.Y. Correct. Law § 168 (McKinney 2000); N.D.Cent.Code § 12.1–32–15, § 25–03.3–01 (1999); Ohio Rev.Code Ann. §§ 2950.01–.99 (Anderson 2000); R.I. Gen. Laws §§ 11–37.1–1 to .1–19 (1999); Tenn.Code Ann. §§ 40–39–101 to –39–110 (2000); Tex. Crim.P.Code Ann. § 62 (West 2001); Vt.Stat.Ann.tit. 13, §§ 5401–5413 (1998); W.Va.Code §§ 15–12–1 to –12–9 (2000); Wyo.Stat.Ann. §§ 7–19–301 to –19–306 (Michie 1999).

The following states refer to out-of-state convictions in their definitions of the class of persons who must register, but they do not have separate classifications for sexually violent predators or sexually violent offenses: Ala.Code §§ 13A–11–200 to –203 (1994); Ariz.Rev.Stat.Ann. §§ 13–3821 to 3825 (West 2001); Colo.Rev.Stat.Ann. § 18–3–412.5 (West 1999); Mich. Comp. Laws Ann. § 28.721–28.732 (West 2000); Minn.Stat.Ann. § 243.166 (West.2001); Mo.Ann.Stat. §§ 589.400–.425

nine states, including Maryland, specifically exclude reference to convictions in other states in their definitions of sexually violent predators and/or sexually violent offenses.[12] For a discussion of the varied legal and medical approaches for handling sex offenders, *see* Samuel Jan Brakel, J.D. & James L. Cavanaugh, Jr., M.D., *Of Psychopaths and Pendulums: Legal and Psychiatric Treatment of Sex Offenders in the United States,* 30 N.M. L.Rev. 69 (2000).

Graves interprets the definition of "sexually violent predator" as set forth in § 792(a)(11), to exclude consideration of sexually violent offenses committed in jurisdictions other than Maryland. The State concedes that the definition of "sexually violent predator" does not include specific language regarding consideration of convictions for sexual offenses committed in other states. Nevertheless, the State asserts that there could be no doubt that the legislature intended to encompass out-of-state offenses within the definitions of "sexually violent offense" and "sexually violent predator."

This Court has often stated that the "paramount goal of statutory interpretation is to identify and effectuate the legislative intent underlying the statute(s) at issue." *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000)(citing *Robinson v. State,* 353 Md. 683, 694, 728 A.2d 698, 703 (1999); *Blondell v. Baltimore Police,* 341 Md. 680, 690, 672 A.2d 639,

---

(West 2001); Neb.Rev.Stat. §§ 29–4001 to 29–4003 (2000); N.J.Stat. Ann. §§ 2C:7–1 to –11 (West 2000); N.M.Stat.Ann. §§ 29–11A–1 to –8 (Michie 1997); Okla.Stat.Ann. tit. 57, §§ 582–587 (West 2001); S.C.Code Ann. §§ 23–3–400 to 3–530 (West 2000); S.D. Codified Laws §§ 22–22–30 to 22–22–40 (Michie 2000); Utah Code Ann. § 77–27–21.5 (2000); Wash.Rev.Code Ann. §§ 9A.44.130–.44.140, 4.24.550 (West 2000); Wis.Stat.Ann. § 301.45 (West 2000).

12. Cal.Penal Code § 290 (West 1999), and Cal. Welf. & Inst.Code § 6600 (West 1998); Conn.Gen.Stat.Ann. §§ 54–250 to 261 (West 2001); Ga.Code Ann. § 42–9–44.1 (1997); Idaho Code §§ 18–8301 to –8326 (2000); Md.Ann.Code art. 27, § 792 (1957, 1996 Repl.Vol., 2000 Supp.); N.C.Gen.Stat. §§ 14–208.5 to –208.32 (Michie 1999); Or.Rev. Stat. §§ 181.585–.606 (1999); 42 Pa. Cons.Stat.Ann. §§ 9791–9799.6 (West 1998); Va.Code Ann. § 19.2–298.1 to –390.1, § 37.1–70.1 (Michie 2000).

644 (1996)). To ascertain the legislative intent of the scope of the definitions of "sexually violent predator" and "sexually violent offense," we must look first to the ordinary and plain meaning of the words of the statute. *See Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347, 1350 (1995); *In re Arnold M.,* 298 Md. 515, 520, 471 A.2d 313, 315 (1984). The language of § 792 must be viewed from a commonsensical perspective to avoid a farfetched interpretation. *See Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994); *Dickerson v. State,* 324 Md. 163, 171, 596 A.2d 648, 652 (1991). We have explained that "all parts of a statute are to be read together to find the intention as to any one part, and all parts are to be reconciled and harmonized if possible." *See Wheeler v. State,* 281 Md. 593, 596, 380 A.2d 1052, 1055 (1977), *cert. denied, Maryland v. Wheeler,* 435 U.S. 997, 98 S.Ct. 1650, 56 L.Ed.2d 86 (1978)(citing *Thomas v. State,* 277 Md. 314, 317, 353 A.2d 256, 258 (1976)).

When considering the definition of a "sexually violent predator" in the context of the statute as a whole, the plain meaning of the words selected by the General Assembly in crafting Maryland's Registration of Offenders statute yields the conclusion that the legislature specifically excluded reference to out-of-state convictions from the realm of criminal conduct to be taken into account in determining whether someone qualifies as a sexually violent predator and the imposition of enhanced registration requirements attendant to such classification. There simply is no reference to convictions in other jurisdictions in the definition of a sexually violent predator, as opposed to the explicit inclusion of out-of-state convictions in the definition of a sexually violent offender in § 792(a)(10).

In the present case, our interpretation of the plain meaning of the definition of "sexually violent predator" as excluding reference to out-of-state convictions also finds support in the legislative history of Senate Bill 605, the predecessor to § 792. Ordinarily, where the language of the statute is not ambiguous or obscure, this Court need not look beyond

the plain language of the statute to discern legislative intent. *See Wheeler, supra,* 281 Md. at 596, 380 A.2d at 1054. Nevertheless, consideration of the background and procedural process of the enactment of § 792 assists us in understanding the statutory construction and context of the enactment of the legislation within the framework of Maryland criminal law. *See State v. Hernandez,* 344 Md. 721, 726, 690 A.2d 526, 529 (1997)(explaining that "[w]hen engaging in the interpretive process, however, the purpose, aim or policy of the legislature cannot be disregarded"); *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987). We have explained that "[c]ontext may include related statutes, pertinent legislative history and other material that fairly bears on the . . . fundamental issue of legislative purpose or goal . . .". *GEICO v. Insurance Comm'r,* 332 Md. 124, 132, 630 A.2d 713, 717 (1993)(quoting *Kaczorowski v. City of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 632–33 (1987))(internal quotations omitted).

Senate Bill 605 was introduced and read for the first time on January 31, 1997. In this original version, the definition of a "sexually violent predator" was a person who:

A(7) (I) 1. Has been convicted of a sexually violent offense;

2. Has been convicted of an attempt to commit a sexually violent offense;

3. Has been granted probation before judgment after being found guilty of a sexually violent offense and has been ordered by the court, as a condition of probation, to comply with the requirements of this section;

4. Has been found not criminally responsible for a sexually violent offense; or

5. Has been convicted in another state of an offense that, if committed in this state, would constitute a sexually violent offense; and

(II) Suffers from a mental abnormality or personality disorder that makes the person likely to commit a sexually violent offense.

Similarly, the same proposal contained the following definition of a "sexually violent offense":

> A(6) (I) A violation of any of the provisions of § 462, § 463, § 464, § 464A, § 464B, or § 464F of this article;
>
> (II) Assault with intent to commit rape in the first or second degree or a sexual offense in the first or second degree as previously proscribed under former § 12 of this article; or
>
> (III) An offense in another state that, if committed in this state, would constitute a violation described in items (I) or (II) of this paragraph.

The legislative history for Senate Bill 605 supported the inclusion of extraterritorial criminal acts in the definitions of "sexually violent offense," "sexually violent offender," and "sexually violent predator." Both the Bill Analysis and the Floor Report for Senate Bill 605 defined the term "sexually violent predator" by reference to sexually violent offenses committed in Maryland as well those committed in other jurisdictions. The Bill Analysis provided the following description of a "sexually violent predator":

> [A] person who has been: (1) convicted of a sexually violent offense, convicted of an attempt to commit a sexually violent offense, granted probation before judgment for a sexually violent offense, found not criminally responsible for a sexually violent offense, or convicted in another state of a crime that is considered a sexually violent offense in this State; and (2) found to suffer from a mental abnormality or personality disorder that makes the person likely to commit a sexually violent offense.

Senate Judicial Proceedings Committee, Bill Analysis of Senate Bill 605 (1997). Whereas, the Floor Report defined a "sexually violent predator" as follows:

> [A] person who has been: (1) convicted of a sexually violent offense, convicted of an attempt to commit a sexually violent offense, granted probation before judgment for a sexually violent offense, found not criminally responsible for a sexually violent offense, or convicted in another state of a

crime that is considered a sexually violent offense in this State; and (2) has been determined by the court to be at risk of committing a subsequent sexually violent offense for the primary purpose of victimization.

Senate Judicial Proceedings Committee, Floor Report, Senate Bill 605 (1997).

The Senate Judicial Proceedings Committee proposed eight amendments to Senate Bill 605 after its first reading. One of the amendments required the removal of the term "mental abnormality" from the definition of a sexually violent predator, and required the additional finding that a person classified as a sexually violent predator must be one who is found to be at risk of committing a subsequent sexually violent offense. None of these amendments, however, concerned the removal of language referring to out-of-state convictions from the definition of a "sexually violent predator."

The Department of Public Safety and Correctional Services submitted a report to the Judicial Proceedings Committee which stressed the importance of having parallel state laws to enhance the effectiveness of the sex offender registration requirements when parolees move from state to state. The committee also received comments from several local and state law enforcement agencies which emphasized the importance of this legislation in preventing recidivism.

Senate Bill 605, however, appears to have been completely rewritten prior to enactment. *Compare* § 792(a)(11) *with* 1997 Md. Laws, ch. 754 at 4271. In the finalized amendments to Senate Bill 605 dated April 7, 1997, the General Assembly removed from the definitions of "sexually violent offense" and "sexually violent predator" all references to substantially similar offenses committed in other states which would qualify as sexually violent offenses in Maryland. *See* 1997 Md. Laws, ch. 754. Instead, the statute requires that a "sexually violent predator" be convicted of "a second or subsequent sexually violent offense" and be at risk of committing additional sexually violent offenses. § 792(a)(11). The General Assembly revised the definition of "sexually violent offense" in the final

version of the statute by eliminating all reference to offenses committed in other jurisdictions which would be comparable to the Maryland offenses enumerated in § 792(a)(9). The General Assembly did, however, continue to define a "sexually violent offender" by including a reference to those persons who have been "convicted in another state of an offense that, if committed in this state would constitute a sexually violent offense." § 792(a)(10).

The State argues that the definition of "sexually violent offender" includes extraterritorial criminal conduct, which eliminates the need to include specific language referring to convictions committed in other jurisdictions within the definition of sexually violent predator. We disagree. To read § 792(a)(11) to include convictions of sexually violent offenses committed in other jurisdictions as urged by the State would require an interpretive insertion of words and phrases into the statutory language which the General Assembly consciously and deliberately removed from the definitions of "sexually violent predator" and "sexually violent offense" in the legislation's final form. *See Wheeler, supra,* 281 Md. at 596, 380 A.2d at 1054 (quoting *In Re Appeals Nos. 1022 & 1081,* 278 Md. 174, 178, 359 A.2d 556, 559 (1976))("we must confine ourselves to the statute as written, and may not attempt, under the guise of construction, to supply omissions or remedy possible defects in the statute.")(internal quotations omitted).

Similarly, the provision of § 792(b)(3)(i) which allows the trial court to consider "[a]ny evidence that the court considers appropriate to the determination of whether the individual is a sexually violent predator" is only triggered after the trial court has determined that the accused has committed a second or subsequent sexually violent offense under Maryland law. *See* § 792(a)(11)(i). Once the trial court has determined that the defendant has not committed a second or subsequent sexually violent offense, then the court's inquiry as to whether the individual may be classified as a sexually violent predator terminates.

The General Assembly did not include language referring to out-of-state convictions in the legislation's final form other than in defining "sexually violent offender." We cannot add such language to the definitions of "sexually violent predator" or "sexually violent offense."

■■■ The General Assembly manifested its intent to limit the classification of sexually violent offenses, and therefore the predicate for determination of status as a sexually violent predator to criminal acts committed under specific provisions of Maryland law, by expressly deleting reference to comparable criminal acts committed in other jurisdictions. Where the legislature has "explicitly raised, considered, and then explicitly jettisoned" particular statutory phrasing or framework, this Court must consider the statute as is, without adding to or deleting from the express language provided therein. *See Garnett v. State*, 332 Md. 571, 585–587, 632 A.2d 797, 804–05 (1993)(finding that the absence of a *mens rea* requirement in the statutory provision for second degree rape resulted from "legislative design"). Furthermore, even if one were to hypothesize that the General Assembly had inadvertently or accidentally omitted the references to out-of-state offenses in the definitions of "sexually violent offense" and "sexually violent predator" in the final version of the legislation, we have held that this Court "could not invade the function of the legislature" by reading missing language into a statute thus rendering it incapable of correcting "an omission in the language of a statute even though it appeared to be the obvious result of inadvertence." *Coleman v. State*, 281 Md. 538, 547, 380 A.2d 49, 55 (1977)(discussing *Birmingham v. Board of Public Works*, 249 Md. 443, 449–50, 239 A.2d 923, 926 (1968)).

The State argues that "it is inconceivable that the General Assembly intended to exclude sex offenders of the most serious classification based on their out-of-state convictions." Nevertheless, the General Assembly managed to do just that by redacting the references to out-of-state convictions from the definitions of "sexually violent offense" and "sexually violent predator." If the General Assembly had intended for

the reference to out-of-state convictions listed in the definition of "sexually violent offender" at § 792(a)(10) to apply to the definition of "sexually violent predator," the General Assembly would have cross-referenced the definition of "sexually violent offender" within its definition of a "sexually violent predator" in § 792(a)(11).

We decline to read into § 792(a)(11) the ability to base a person's status as a sexually violent predator on convictions or guilty pleas for offenses occurring and charged in other jurisdictions. Graves pled guilty to third degree sexual offense, a violation of Art. 27, § 464B. A conviction for a violation of § 464B qualifies as a sexually violent offense for purposes of the sex offender registration statute. *See* § 792(a)(9). The trial judge, however, considered Graves's 1992 conviction in the District of Columbia for indecent acts on a minor in finding Graves to be a sexually violent predator under the sex offender registration statute. While § 792(b)(3) permits the trial court to consider the evidence of the 1992 conviction in evaluating the likelihood of Graves's recidivism pursuant to the second prong of the sexually violent predator analysis set forth in § 792(a)(11)(ii), the plain language of the statute limits the definition of a sexually violent offense to specific offenses under Maryland law. Thus, the definition of "sexually violent offense" bars the trial court's consideration of Graves's out-of-state conviction in establishing his 1998 conviction as a "second or subsequent sexually violent offense" for purposes of classification as a sexually violent predator. *See* § 792(a)(9) and (11). Accordingly, Graves does not meet the requirements of the enhanced registration prescribed for sexually violent predators in § 792(h)(4).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE SENTENCE IM-POSED BY THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUN-TY FOR NEW SENTENCING IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID IN THIS COURT*

*AND THE COURT OF SPECIAL APPEALS BY PRINCE GEORGE'S COUNTY.*