857 A.2d 1176

**Julian GRAY**

v.

**STATE of Maryland.**

**No. 1945, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Sept. 13, 2004.

Flynn M. Owens (Jack B. Rubin, on the brief), Baltimore, for Appellant.

Mary Ann Ince (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for Appellee.

Panel: KENNEY, CHARLES E. MOYLAN, Jr. (Ret'd, specially assigned), ANDREW L. SONNER,* (Ret'd, specially assigned), JJ.

KENNEY, J.

Julian Gray appeals from an order of the Circuit Court for Baltimore City, denying a petition to reopen a previously concluded postconviction proceeding because reopening the proceeding was "not in the interests of justice." In this appeal, appellant asks the following question:

Was denial of the petition to reopen [the] postconviction proceeding, unadorned by any supporting statement or memorandum as to the issues upon which the petition was based, erroneous, in that it served to render meaningful appellate review impossible?

Answering "no," we shall affirm the judgment of the circuit court.

---

* Sonner, J. participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 1991, a jury convicted appellant of the second degree murder of Randy Hudson. He was sentenced to thirty years for the murder conviction plus five years consecutive for the felonious use of a handgun. On direct appeal, he challenged the convictions on two grounds. First, he argued that the trial court violated his right to confrontation and cross-examination by erroneously allowing hearsay evidence. Second, he contended that the trial court erred by refusing to allow him to argue about the lack of fingerprint evidence with respect to the spent handgun cartridges. We affirmed appellant's convictions in an unreported *per curiam* opinion, *Gray v. State of Maryland*, No. 1006, September Term, 1991, 91 Md.App. 841 (filed April 20, 1992).

In 1999, appellant collaterally attacked his convictions under the Uniform Postconviction Procedure Act ("UPPA"), as codified at the time at Maryland Code (1957, 1996 Repl. Vol), Art. 27, §§ 645A–J.[1] In his postconviction petition, appellant argued that he was entitled to a new trial because of the ineffective assistance of counsel. He contended that trial counsel had failed to (1) investigate affirmative defenses; (2) effectively cross-examine Erika McCray, a witness for the prosecution; (3) object to inadmissible evidence; and (4) present mitigating evidence at sentencing.

At the postconviction hearing, appellant abandoned all but the first allegation, which concerned the trial testimony of McCray, who had implicated appellant in the murder. McCray testified that she and three friends had been at Peggy Riddick's house on the day that Hudson was shot. As they prepared to leave Riddick's house in the early evening, McCray said she was standing "right at the doorway" and saw "a bunch of guys running through the alley." Because she "thought they were stickup boys," McCray and her friends went back inside Riddick's house. After one or two minutes,

---

1. Effective October 1, 2001, the UPPA was repealed and reenacted without substantive change at Md.Code (2001), §§ 7–101 *et seq.* of the Criminal Procedure Article.

they emerged again and McCray observed both appellant and the victim standing on a nearby ramp leading to a laundry room in an adjacent building, "having words." She heard five or more gunshots, observed "the [victim] falling down" and appellant "going [in] another direction." At that time, McCray said she was standing "on the porch at [Riddick's] house."

Appellant contended that trial counsel had rendered ineffective assistance by failing to investigate whether McCray could have observed the murder from her location on Riddick's front porch. Appellant explained that a wall of an adjacent building obstructed the view of the laundry room ramp from Riddick's front porch. He argued that McCray could have observed the murder only if she was standing on the steps leading down from the porch and not from the "doorway" of the house.

Four witnesses, including appellant, testified at the postconviction hearing. Appellant and Jackie Gray, appellant's sister, testified that they had informed trial counsel that McCray could not have observed the murder from the front porch. Riddick, who had not testified at the trial, stated that she had been prepared to testify that McCray could not have observed the murder from the doorway of the house. John Denholm, appellant's trial counsel, testified that he had not been informed of additional witnesses and could not recall whether he had visited the crime scene.

The circuit court denied appellant's request for postconviction relief in a "Statement of Reasons and Order of Court," which provided the following relevant information:

## FACTS

At the postconviction hearing, [appellant] and [Jackie] Gray testified that they informed trial counsel ... that the State's only eyewitness (Erika McCray) could not possibly have seen the murder from the porch of a nearby house where she testified she was located. Peggy Riddick, who lived in the house in question, also testified that she was ready and available to testify at [appellant's] trial that you

cannot see the murder site if you are located at the front door on her porch.

* * *

[Appellant] asserts that counsel should have visited the murder site and followed up on the information provided by [him] and Frankie Gray that it was impossible for [McCray] to see the murder from the porch of the house in question. In failing to do so, [appellant] argues that trial counsel was unreasonably deficient in his duties and his non-action prejudiced the case.

### ANSWER

* * *

The deficiency prong of the *Strickland* test is arguably satisfied. In the instant case, it would have been prudent to visit or at least obtain pictures of the homicide scene to better assess the testimony of [McCray]. In addition, the record supports [appellant's] view that [McCray] could not have actually seen who shot the victim.

However, the second prong of *Strickland,* counsel's performance prejudiced the defense, is not satisfied. Even if counsel had visited the crime scene, it would have not have changed the testimony offered by [McCray] which completely contradicted [appellant's] alibi defense. [McCray] testified that she saw [appellant] walking with the victim in the direction of where the murder took place; that the victim and [appellant] were "having words;" that she heard five or more shots; that she saw the victim falling down; and that she saw [appellant] leaving the murder scene going in the opposite direction down an alley. [McCray] was no longer on the porch of the house in question when she witnessed these events. She had moved down the steps and off to the side enabling her to have a better view of the aforementioned events.

Therefore, although she could not testify to who actually shot the victim, she did provide strong circumstantial evi-

dence that [appellant] committed the murder. She also completely destroyed [appellant's] alibi defense that he was at a hospital during his child's birth. The jury simply found [McCray] more credible. Counsel's visit to the murder site would not have prevented [McCray] from putting [appellant] at the scene of the homicide.

Appellant filed an application for leave to appeal from the denial of postconviction relief, which we denied in an unreported per curiam opinion, *Gray v. State of Maryland*, No. 365, September Term, 2000 (filed April 2, 2001).

On August 21, 2003, appellant filed a petition to reopen the postconviction proceeding pursuant to Md.Code (2001), § 7–104 of the Criminal Procedure Article ("CP"), asserting his innocence and arguing that his postconviction counsel had rendered ineffective assistance.[2] In support, appellant relied upon affidavits that an investigator had procured from McCray and Riddick on May 9, 2003.

In her affidavit, McCray recanted her trial testimony, averring that she had lied about witnessing the murder. She stated that her testimony was based upon information that she had learned from Shauna Hantz, one of the friends who was present with McCray on the evening of the murder, and who is now deceased. Riddick averred:

I lived at 1823 Ruxton Avenue, Baltimore, Maryland at the time of this incident. Erika McCray, Shauna Hantz, and Tina were inside my house at the time when we heard gunshots going off outside. There is no way that Erika McCray could have seen who did the shooting as she was inside my house at the time.

With respect to the first allegation, appellant argued that reopening was necessary to remedy the violation of his due process rights that resulted "in the injustice of the conviction of an innocent person." He contended that "no reasonable

---

2. CP § 7–104 provides that a court "may reopen a postconviction proceeding that was previously concluded if the court determines that the action is in the interests of justice."

juror, knowing that McCray perjured herself, would have voted to convict" him. Moreover, appellant could not have raised the issue of "McCray's epiphany" at the prior postconviction hearing because McCray had not "repudiated her trial testimony."

Regarding the second allegation, appellant argued that his postconviction counsel's questioning of Riddick was inadequate because he did not ask Riddick where McCray was standing when the murder occurred. According to appellant, if the correct questions had been asked, the information that Riddick provided in her affidavit, i.e., that McCray was not outside when the murder occurred, would have been elicited during the postconviction hearing.

The State responded that the petition to reopen should be denied for two reasons. First, relying on *Diggs v. Warden*, 221 Md. 624, 157 A.2d 453 (1960), and *Gordon v. Superintendent, Maryland Correctional Institution*, 2 Md.App. 355, 234 A.2d 486 (1967), the State argued that newly discovered evidence, i.e., McCray's recanted testimony, was not a basis upon which to grant postconviction relief. Second, it asserted that the performance of appellant's postconviction counsel was not deficient and did not prejudice appellant.

The circuit court denied the petition in an order reading:

### ORDER

[Appellant] has filed [a] Petition to Reopen Postconviction Proceedings and an attendant Memorandum. The State has filed [a] Motion in Opposition and an attendant Memorandum. This Court has reviewed and considered the matters submitted by both counsel as well as the post-conviction proceedings relevant hereto.

IT IS ORDERED this 10th day of October 2003, by the Circuit Court for Baltimore City pursuant to [CP] § 7–104 upon FINDING that to reopen postconviction proceedings in the matter ... is "not in the interests of justice."

AND, THEREFORE, [appellant's Petition] to Reopen Postconviction Proceedings is DENIED, without hearing.

## Overview of the UPPA

The UPPA and Maryland Rules 4–401 *et seq.* apply to a person who is "confined under sentence of death or imprisonment" or "on parole or probation." CP § 7–101. Under the UPPA, a convicted person may file a petition for postconviction relief at any time if he or she claims that

(1) the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or laws of the State;

(2) the court lacked jurisdiction to impose the sentence;

(3) the sentence exceeds the maximum allowed by law; or

(4) the sentence is otherwise subject to collateral attack on a ground of alleged error that would otherwise be available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy.

CP § 7–102(a). A person also may begin a postconviction proceeding if he or she "seeks to set aside or correct the judgment or sentence" and "the alleged error has not been previously and finally litigated or waived in the proceeding resulting in the conviction or in any other proceeding that the person has taken to secure relief from the person's conviction." CP § 7–102(b).

A petition must include, among other things, the allegations of error, "a concise statement of facts supporting the allegations of error," the relief sought, and a statement of facts showing that the allegations of error have not been waived. Maryland Rule 4–402(a). A person may file only one postconviction petition for each trial or sentence, CP § 7–103(a), and, in a case where a sentence of death has not been imposed, the petition must be filed within ten years of imposition of the sentence, unless extraordinary cause is shown, CP § 7–103(b)(1). As noted, a court may only "reopen a postconviction proceeding that was previously concluded if the court determines that the action is in the interests of justice." CP § 7–104. Generally, a person filing a petition is entitled to assistance of counsel and a hearing. CP § 7–108(a); *see* Md. Rule 4–406(a). When, however, a person seeks to reopen a

postconviction proceeding, "the court shall determine whether assistance from counsel or a hearing should be granted," CP § 7–108(b)(1); *see* Md. Rule 4–406(a).

In a postconviction proceeding, the "judge also has a clear responsibility." *Pfoff v. State*, 85 Md.App. 296, 303, 583 A.2d 1097 (1991). Md. Rule 4–407(a) and (b) state:

(a) **Statement.** The judge shall prepare and file or dictate into the record a statement setting forth separately each ground upon which the petition is based, the federal and state rights involved, the court's ruling with respect to each ground, and the reasons for the action taken thereon. If dictated into the record, the statement shall be promptly transcribed.

(b) **Order of court.** The statement shall include or be accompanied by an order either granting or denying relief. If the order is in favor of the petitioner, the court may provide for rearraignment, retrial, custody, bail, discharge, correction of sentence, or other matters that may be necessary and proper.

We have explained that Rule 4–407(a) requires a three-step process, including:

The first step, obviously, is to identify each complaint made by the petitioner. The source for this will ordinarily be the petition itself, or any amendments to it, although occasionally matters mentioned in the petition will be supplemented or clarified by evidence presented at a hearing or other presentations made to the court. It is important that the court, in its memorandum or dictated statement, identify those complaints with sufficient precision and completeness that, on an application for leave to appeal or in subsequent collateral proceedings, the court can determine with some assurance what, in fact, was litigated.

\* \* \*

The second step is to make clear both the court's ruling on each complaint and the reasons used to support that result. Here again, some precision is required. Where, for

example, the outcome is based on a resolution of conflicting evidence, the court should state how it has resolved the conflict and why.

\* \* \*

Finally, the statement should contain the judge's ruling and the authority for that ruling. . . .

The procedures we have outlined above are not intended to be a straightjacket for prosecutors and judges, who we know have many other pressing duties, but simply guidelines to assure that these proceedings are handled in accordance with the requirements established by the General Assembly and the Court of Appeals.

*Pfoff,* 85 Md.App. at 303–05, 583 A.2d 1097.

## DISCUSSION

■ Here, in its written order, the circuit court denied, without a hearing, appellant's request to reopen the postconviction proceeding because it was not "in the interests of justice" to do so. Appellant argues that the circuit court erred by not filing a supporting statement or memorandum. We disagree.

The statute does not mandate any particular statement by the circuit court when disposing of either a petition for postconviction relief or a subsequent request to reopen a previously concluded postconviction proceeding, but Md. Rule 4–407(a) expressly requires a circuit court to prepare and file a detailed statement when disposing of a petition for postconviction relief. The Rule does not address whether such a statement, or if any statement, is required when a circuit court denies a petition to reopen a previously concluded postconviction proceeding. It would seem, however, that, if the proceeding is not reopened, the proceeding remains "closed," and thus, there is no reason to evaluate the asserted grounds on the merits. Moreover, if each request to reopen a closed proceeding required an in-depth assessment as to each of the issues upon which the petition was based, the effect would be

an unlimited number of postconviction proceedings disguised as requests to reopen the proceeding.

There are significant differences between the filing of a petition for postconviction relief and a request to reopen a postconviction proceeding. For example, a person is entitled, as a matter of right, to file one postconviction petition. CP § 7–103(a). The reopening of a closed postconviction proceeding, however, is at the discretion of the circuit court. CP § 7–104.

Also, as a matter of right, a person filing a petition for postconviction relief is entitled to a hearing and the assistance of counsel. CP § 7–108(a); Md. Rule 4–406(a). A request that a postconviction proceeding be reopened does not entitle a person to either. Under the statute, the circuit court determines if a hearing and the assistance of counsel "should be granted." CP § 7–108(b)(1). Md. Rule 4–406(a) provides that, in the absence of a stipulation that the applicable facts and law justify the requested relief, the circuit court may not reopen a proceeding or grant relief without a hearing, but a request to reopen can be denied without a hearing.

Since the enactment of the UPPA in 1958, the General Assembly has acted to limit the number of postconviction petitions that a person may file for each conviction. Originally, the UPPA "did not place any limit on the number of postconviction petitions which a petitioner was entitled to file." *Mason v. State*, 309 Md. 215, 217–18, 522 A.2d 1344 (1987). But, effective July 1, 1986, Art. 27, § 645A was amended by adding subsection (a)(2), which provided that a "person may not file more than two petitions, arising out of each trial, for relief under this Subtitle," *Grayson v. State*, 354 Md. 1, 3, 728 A.2d 1280 (1999).

In 1995, the General Assembly again changed the number of petitions that could be filed to challenge a particular conviction. By Ch. 110 of the Acts of 1995, which primarily amended provisions relating to the death penalty, (I) and (II) were added to subsection (a)(2) and subsequently codified as Art. 27, 645A(a)(2)(i) and (iii). Under subsection (a)(2)(i), a person

was permitted to "file only one petition arising out of each trial," *id.* at 4, 728 A.2d 1280, and subsection (a)(2)(iii) provided that "[t]he court may in its discretion reopen a postconviction proceeding that was previously concluded if the court determines that such action is in the interests of justice." *Id.*

In 2001, the UPPA was repealed and reenacted at CP §§ 7–101 *et seq.* The provision relating to the reopening of a postconviction proceeding is now codified at CP § 7–104 and contains "new language derived without substantive change." Revisor's Note. The words "in its discretion" were "deleted as surplusage." *Id.*

Based on the foregoing, we are not persuaded that the circuit court was required to prepare a statement that complied, or substantially complied, with Md. Rule 4–407(a) when it denied the petition to reopen a previously concluded postconviction proceeding based on its determination that reopening was not in the interests of justice.[3] Rather, it was sufficient for the court to file an order to that effect.

To be sure, a detailed explanation might facilitate appellate review, but we do not believe that it would be impossible to review the circuit court's determination that the reopening of

---

3. Although the phrase "in the interests of justice," as used in CP § 7–104, has not been defined, we have considered its meaning in the context of a motion for a new trial under Md. Rule 4–331, the granting of which is also within the discretion of the circuit court. In *Love v. State*, 95 Md.App. 420, 427, 621 A.2d 910 (1993), we stated that the grounds "for the granting of a new trial ... [are] virtually open-ended," including the following: "that the verdict was contrary to the evidence; newly discovered evidence; accident and surprise; misconduct of jurors or the officer having them in charge; bias and disqualification of jurors ...; misconduct or error of the judge; fraud or misconduct of the prosecution." *Id.* We also explained that a new trial could be granted if the evidence was legally insufficient or the verdict was "so against the weight of the evidence as to constitute a miscarriage of justice." *Id.* In *Isley v. State*, 129 Md.App. 611, 633, 743 A.2d 772 (2000), we commented that "there are no limits on the substantive content of what may be urged ... as being 'in the interest of justice.'" In the context of reopening a postconviction proceeding, whatever latitude that may be assigned to the exercise of judicial discretion "in the interests of justice" would be somewhat circumscribed by the statutory constraints of the UPPA and the type of claims to which it affords a remedy.

the postconviction proceeding in this case was not "in the interests of justice." We explain.

In *Stovall v. State,* 144 Md.App. 711, 715–16, 800 A.2d 31 (2002), we determined that a person is entitled to the effective assistance of postconviction counsel and has a "right to reopen a postconviction proceeding by asserting facts that—if proven to be true at a subsequent hearing—establish that post conviction relief would have been granted but for the ineffective assistance of . . . post conviction counsel." Assuming, but without deciding, that McCray's admission that she had committed perjury constituted newly discovered evidence, it does not establish appellant's innocence in the sense that she is now saying that it was not appellant who shot the victim. In addition, such evidence does not ordinarily provide grounds for postconviction relief. *See Diggs,* 221 Md. at 626, 157 A.2d 453 (citing *Ricail v. Warden, Maryland House of Correction,* 210 Md. 664, 123 A.2d 908 (1956)) (stating that petitioner could not seek postconviction relief "where one of [his] contentions was that he had newly discovered evidence that he did not commit the crime of which he was accused. . . ."); *Gordon v. Superintendent,* 2 Md.App. 355, 355–56, 234 A.2d 486 (1967) (holding that "a claim of discovery of new evidence that might have changed the result of conviction is not ground for postconviction relief"). The usual approach for dealing with newly discovered evidence is set forth in Md. Rule 4–331. Perjured testimony does not constitute grounds for postconviction relief in the absence of allegations that a state officer had a part in procuring the testimony or, at the time of the trial, knew it to be perjured. *State v. D'Onofrio,* 221 Md. 20, 155 A.2d 643 (1959); *Fisher v. Warden of Maryland House of Correction,* 225 Md. 642, 171 A.2d 731 (1961). Appellant makes no such allegations in this case.

Moreover, we are not persuaded that McCray's "epiphany," which occurred after the death of the alleged actual witness and nearly four years after the initial postconviction proceeding, would have spontaneously occurred had postconviction counsel asked Riddick where McCray was at the time of the

shooting. At the time of trial, Riddick was prepared to say that McCray could not have seen the murder from the doorway of the house, not that McCray was in the house and could not have seen anything. The postconviction court recognized that McCray did not see appellant shoot the victim, but, because she had "moved down the steps," she was able to see the things to which she had testified.

As appellant acknowledges, until the recantation of McCray's testimony, no one, including postconviction counsel, could know that McCray would repudiate her testimony. Without McCray's recantation, testimony by Riddick that McCray was in the house would have created a credibility issue, but credibility issues are not ordinarily reviewable in a postconviction proceeding. *Walls v. Warden, Maryland Penitentiary*, 242 Md. 401, 404, 219 A.2d 6 (1966). Thus, had we been asked, we would conclude that the circuit court, on the record in this case, did not abuse its discretion by refusing to reopen the postconviction proceeding.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**