879 A.2d 1064

Julian GRAY

v.

STATE of Maryland.

No. 108, Sept. Term, 2004.

Court of Appeals of Maryland.

Aug. 10, 2005.

Flynn M. Owens (Jack B. Rubin of Jack B. Rubin, P.A., Baltimore), on brief, for petitioner.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, Baltimore), on brief, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

On January 10, 1990, Randy Hudson was fatally shot in Baltimore City. As a result of that shooting, on April 17, 1991, Julian Gray, petitioner in this case, was convicted by a jury of second-degree murder and use of a handgun in the commission of a violent crime. The court sentenced Gray to thirty-

years' imprisonment for the murder and five-years' imprisonment for the handgun conviction. Gray appealed and on April 20, 1992, the Court of Special Appeals affirmed his convictions in an unreported opinion. Gray petitioned this Court for *certiorari,* and we denied the petition. *Gray v. State,* 327 Md. 626, 612 A.2d 256 (1992).

On July 28, 1999, Gray petitioned for postconviction relief. On December 22, 1999, the Circuit Court for Baltimore City, Judge Clifton J. Gordy, Jr., presiding, held a hearing on the petition, at which both the State and Gray presented witnesses. On January 10, 2000, Judge Gordy denied the postconviction petition and issued a "Statement of Reasons and Order of Court." On March 13, 2000, Gray filed an Application for Leave to Appeal, which was denied by the Court of Special Appeals on April 2, 2001.

On August 20, 2003, Gray filed a "Petition to Reopen Post Conviction Proceedings" in the Circuit Court for Baltimore City, pursuant to Md.Code (2001), § 7–104 of the Criminal Procedure Article. The State opposed the petition and on October 10, 2003, Judge Gordy denied Gray's petition, concluding that reopening would not be in the interest of justice. Gray filed an Application for Leave to Appeal, which was granted by the Court of Special Appeals on February 24, 2004. On September 13, 2004, in a reported opinion, the Court of Special Appeals affirmed the Circuit Court. *Gray v. State,* 158 Md.App. 635, 857 A.2d 1176 (2004). Gray petitioned this Court and on December 17, 2004, we granted *certiorari. Gray v. State,* 384 Md. 448, 863 A.2d 997 (2004).

We are asked to determine whether a circuit court is required under the Maryland Rules to render a supporting statement or memorandum explicating a decision to deny a request to reopen a postconviction proceeding. We hold that the court is not required to provide a detailed supporting statement or memorandum when ruling upon a petition to reopen a postconviction proceeding.

## FACTS

During Gray's trial, fifteen-year-old Erika McCray [1] testified that on the night of the shooting, she went to her friend Peggy Riddic's [2] house, located across the alley from a laundromat at North and Ruxton Avenues. McCray testified that she, Shauna Hantz, and two other friends named Tina and Neda, started to leave Riddic's house, and when she was at the doorway, McCray said she saw a "bunch of guys," whom she did not know, "running through the alley so we ran back in." She testified that they ran back in the house for a few minutes because they thought the people they saw were "stickup boys," meaning "people who stick people up and take what they have like money."

McCray also testified that after a minute or two, she and the other girls came out of the house and while on the porch, they saw a "couple other guys" walking from Moreland to Ruxton Avenue. McCray then testified that she saw two guys, one of whom was Gray, walk down Ruxton Road toward the laundromat and that "they was passing a few words." After that, McCray heard five or more gunshots. When asked what she did next, she testified that, "[w]e just stood there and then we was stunned and then we walked around the corner." Then McCray testified that when she looked over towards the laundromat, she saw the victim falling down and she saw Gray "going another direction." Gray was convicted of second-degree murder and use of a handgun in the commission of a violent crime.

Gray appealed, claiming that the trial court erred by admitting hearsay evidence and by precluding discussion of the lack of fingerprint evidence on the murder weapon. On April 20, 1992, Gray's convictions were upheld by the Court of Special

---

1. The Circuit Court spelled "Erika" as "Erica." However, the statement signed by Ms. McCray uses a "k" in Erika.

2. The Circuit Court spelled "Riddic" as "Riddick." However, the statement signed by Ms. Riddic does not include a "k" at the end.

Appeals. On September 15, 1992, we denied Gray's petition for *certiorari.*

On July 28, 1999, Gray petitioned for postconviction relief, alleging ineffective assistance of trial counsel. Gray argued that his attorney failed to (1) investigate affirmative defenses, (2) cross-examine Erika McCray effectively, (3) object to inadmissible evidence, and (4) present mitigating evidence at sentencing.[3] The court held a hearing on the petition and heard testimony from Gray, Gray's sister (Frankie Gray), Peggy Riddic, and John Denholm, Gray's trial counsel. Gray, Frankie Gray, and Riddic testified that McCray could not have seen the murder from the doorway of the house. Denholm testified that he was not aware of additional available witnesses and that he could not recall if he had visited the crime scene.

On January 10, 2000, Judge Gordy denied Gray's petition. Judge Gordy summarized Gray's argument as follows:

At the Post Conviction hearing, Petitioner and Frankie Gray testified that they informed trial counsel, Mr. Denholm that the State's only witness (Erica McCray) could not possibly have seen the murder from the porch of a nearby house (1823 Ruxton Avenue) where she testified she was located. Ms. Peggy Riddick, who lived in the house in question, also testified that she was ready and available to testify at Mr. Gray's trial that you cannot see the murder site if you are located at the front door on her porch.

\* \* \* \*

Petitioner asserts that counsel should have visited the murder site and followed up on the information provided by the Petitioner and Frankie Gray that it was impossible for the State's witness to see the murder from the porch of the house in question. In failing to do so, Petitioner argues that trial counsel was unreasonably deficient in his duties and his non-action prejudiced the case.

---

**3.** At the postconviction hearing, Gray abandoned most of his allegations and focused solely on the alleged failure to investigate defenses and the problems with Ms. McCray's testimony.

Judge Gordy found that the first prong of the *Strickland* test, requiring deficient performance of counsel, was "arguably satisfied." He noted that "it would have been prudent to visit or at least obtain pictures of the homicide scene to better assess the testimony of the State's witness. In addition, the record supports Petitioner's view that the State's eyewitness could not have actually seen who shot the victim." Judge Gordy concluded, however, that Gray was not prejudiced by his counsel's performance. The court wrote:

Even if counsel had visited the crime scene, it would not have changed the testimony offered by the State's witness, which completely contradicted Petitioner's alibi defense. The State's witness testified that she saw Mr. Gray walking with the victim in the direction of where the murder took place; that the victim and Mr. Gray were "having words"; that she saw the boy (victim) falling down; and that she saw the Defendant–Petitioner, Mr. Gray, leaving the murder scene going in the opposite direction down an alley. The State's eyewitness was no longer on the porch of the house in question when she witnessed these events. She had moved down the steps and off to the side enabling her to have a better view of the aforementioned events.

Therefore, although she could not testify to who actually shot the victim, she did provide strong circumstantial evidence that Mr. Gray committed the murder. She also completely destroyed his alibi defense that he was at a hospital during his child's birth.

On April 2, 2001, the Court of Special Appeals denied Gray's March 13, 2000, Application for Leave to Appeal Judge Gordy's decision.

On August 20, 2003, Gray filed a petition to reopen the postconviction proceeding, pursuant to § 7–104 of the Criminal Procedure Article. Gray argued that his postconviction counsel was ineffective and that his case must be reopened to prevent the "injustice of the conviction of an innocent person." In support of his claims, Gray provided a written statement by McCray, dated May 9, 2003, indicating that portions of her

trial testimony were false. Gray had already questioned McCray's trial testimony in his postconviction hearing. With the petition to reopen, however, he provided for the first time, a statement from McCray that her trial testimony was partially false.

In her May 9 statement, McCray claimed that at the time of the shooting she was inside Peggy Riddic's house and not on the porch as she had claimed at the trial. She further stated that the only actual knowledge she had of the shooting was provided to her by her friend Shauna, who is now deceased. McCray alleged that, after the shooting, Shauna told her that she had seen Gray with a gun earlier. McCray also claimed that she lied at Gray's trial because she was "bitter" about being detained at the Waxter Center, a juvenile facility, to ensure that she would testify. McCray stated that she gave a friend of Gray's her number because she felt guilty for lying. According to McCray, when Gray called, McCray informed him of her actions and asked for forgiveness.

Gray also attached a written statement from Peggy Riddic, the person who lived in the home McCray was visiting during the shooting. Riddic's statement is as follows:

> I lived at 1823 Ruxton Avenue, Baltimore, Maryland at the time of this incident. Erika McCray, Shauna Hantz and Tina were inside my house at the time when we heard gunshots going off outside. There is no way that Erika McCray could have seen who did the shooting as she was inside my house at the time.

As previously noted, during Gray's postconviction hearing, Riddic testified that it would have been impossible to see the location of the shooting from her doorway. In support of his petition to reopen, however, Gray complained that at the postconviction hearing, counsel did not ask Riddic, as a preliminary matter, whether McCray was even at the doorway at the time of the shooting.[4] Gray asserted that the failure to ask

---

4. Gray asserts in his brief before this Court that if Riddic had been asked that question, "she would have testified that Ms. McCray was not in fact in the doorway when Mr. Hudson was shot."

that question constituted ineffective assistance of postconviction counsel.

The State argued that the petition should be denied because McCray's recanted testimony was not a basis for postconviction relief and because Gray's postconviction counsel was not ineffective and did not prejudice Gray.

On October 10, 2003, Judge Gordy issued the following Order:

The Petitioner Julian Gray has filed a Petition to Re–Open Post Conviction Proceedings and an attendant Memorandum. The State has filed a Motion in Opposition and an attendant Memorandum. This court has reviewed and considered the matters submitted by both counsel as well as the post conviction proceedings relevant hereto.

IT IS ORDERED this 10th day of October, 2003, by the Circuit Court for Baltimore City pursuant to Maryland Code Annotated, Criminal Procedure, § 7–104 (2001) upon FINDING that to reopen post conviction proceedings in the matter, captioned above, is "not in the interest of justice," AND THEREFORE, the Petitioner Julian Gray's Motion to Re–Open Post Conviction Proceedings is DENIED, without hearing.

On September 13, 2004, in a reported opinion, the Court of Special Appeals upheld Judge Gordy's decision. *Gray v. State,* 158 Md.App. 635, 857 A.2d 1176 (2004). Gray petitioned this Court and on December 17, 2004, we granted *certiorari. Gray v. State,* 384 Md. 448, 863 A.2d 997 (2004).

## STANDARD OF REVIEW

According to Maryland Rule 8–131(c) "when an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." The clearly erroneous standard does not apply to legal conclusions. *Nesbit v. GEICO,* 382 Md. 65, 72, 854 A.2d

879, 883 (2004). "When the trial court's order 'involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review." *Nesbit,* 382 Md. at 72, 854 A.2d at 883 (quoting *Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609, 612 (2002)). We interpret the Md. Rules under the same standard of review. *Davis v. Slater,* 383 Md. 599, 604, 861 A.2d 78, 81 (2004).

The issue raised in this case, whether the court is required to provide a statement supporting its denial of a petition to reopen a postconviction proceeding, involves the interpretation of § 7–103 of the Criminal Procedure Article and Md. Rule 4–407. As such, our review is *de novo.*

## DISCUSSION

### I.

Section 7–103 of the Criminal Procedure Article provides:

(a) *Only one petition allowed.*—For each trial or sentence, a person may file only one petition for relief under this title.

(b) *10–year filing period.*—(1) Unless extraordinary cause is shown, in a case in which a sentence of death has not been imposed, a petition under this subtitle may not be filed more than 10 years after the sentence was imposed. (2) In a case in which a sentence of death has been imposed, Subtitle 2 of this title governs the time of filing a petition.

Md.Code (2001), § 7–103 of the Criminal Procedure Article. Section 7–104 states that "[t]he court may reopen a postconviction proceeding that was previously concluded if the court determines that the action is in the interest of justice." Md.Code (2001), § 7–104 of the Criminal Procedure Article.

Chapter 400 of Title 4 of the Md. Rules governs the procedural rules for postconviction matters. Md. Rule 4–407 provides:

(a) *Statement.* The judge shall prepare and file or dictate into the record a statement setting forth separately each ground upon which the petition is based, the federal and state rights involved, the court's ruling with respect to each ground, and the reasons for the action taken thereon. If dictated into the record, the statement shall be promptly transcribed.

(b) *Order of court.* The statement shall include or be accompanied by an order either granting or denying relief. If the order is in favor of the petitioner, the court may provide for rearraignment, retrial, custody, bail, discharge, correction of sentence, or other matters that may be necessary and proper.

(c) *Copy to the parties.* A copy of the statement and the order shall be filed with the clerk and sent to the petitioner, petitioner's counsel, and that State's Attorney.

(d) *Finality.* The statement and order constitute a final judgment when entered by the clerk.

▮▮▮▮ As we stated in *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995), "[t]he first step in determining legislative intent is to look at the statutory language and '[i]f the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written.' " *Oaks,* 339 Md. at 35, 660 A.2d at 429 (quoting *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994)). The same analysis pertains to our interpretation of the Md. Rules. *Johnson v. State,* 360 Md. 250, 264, 757 A.2d 796, 804 (2000). Section 7–104 of the Criminal Procedure Article says nothing about whether the Circuit Court must give a particular type of statement (or any statement at all) when ruling on a request to reopen a postconviction proceeding. Moreover, Md. Rule 4–407 does not mention whether the requirement to provide a detailed statement, as stated in Md. Rule 4–407(a), is applicable to the denial of a petition to reopen postconviction proceedings. If the intent of a statute is not clear from its language, we may consider other sources.

*See Johnson v. Mayor & City Council of Baltimore City*, 387 Md. 1, 11, 874 A.2d 439, 445 (2005) (discussing the history and general purpose of the Workers' Compensation Act and noting that we construe statutory language in light of the legislative purpose and statutory context). As noted in *Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987),

> [w]e may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

*Kaczorowski*, 309 Md. at 515, 525 A.2d at 632–33.

The historical development of the Uniform Postconviction Procedure Act (UPPA), over time, reveals a legislative attempt to limit the number of postconviction petitions that can be filed. That statutory history supports our holding that the court is not required to treat a petition to reopen the same as a petition for postconviction relief. The reported opinion of the Court of Special Appeals in this case provides the following historical review of the Act:

> Since the enactment of the UPPA in 1958, the General Assembly has acted to limit the number of postconviction petitions that a person may file for each conviction. Originally, the UPPA "did not place any limit on the number of postconviction petitions which a petitioner was entitled to file." *Mason v. State*, 309 Md. 215, 217–18, 522 A.2d 1344 (1987). But, effective July 1, 1986, Art. 27, § 645A was amended by adding subsection (a)(2), which provided that a "person may not file more than two petitions, arising out of each trial, for relief under this Subtitle," *Grayson v. State*, 354 Md. 1, 3, 728 A.2d [1280] 1289 (1999).
>
> In 1995, the General Assembly again changed the number of petitions that could be filed to challenge a particular convic-

tion. By Ch. 110 of the Acts of 1995 ... (I) and (II) were added to subsection (a)(2) and subsequently codified as Art. 27, 645A (a)(2)(I) and (iii). Under subsection (a)(2)(I), a person was permitted to "file only one petition arising out of each trial," *Id.* at 4 [728 A.2d 1280], and subsection (a)(2)(iii) provided that "[t]he court may in its discretion reopen a postconviction proceeding that was previously concluded if the court determines that such action is in the interests of justice." *Id.*

In 2001, the UPPA was repealed and reenacted at CP §§ 7–101 *et seq.* The provision relating to the reopening of a postconviction proceeding is now codified at CP § 7–104 and contains "new language derived without substantive change." Revisor's Note. The words "in its discretion" were "deleted as surplusage." *Id.*

*Gray,* 158 Md.App. at 645–646, 857 A.2d at 1182. Consideration of the statutory purpose can help us determine the legislative intent. *Kaczorowski,* 309 Md. at 517, 525 A.2d at 634 (1987).

To interpret section 7–104 as requiring a court to render a supporting statement with respect to its decisions on petitions (treating them exactly like a petition for postconviction relief) would ignore the purpose of the postconviction legislation as revealed by its development over time—that is, to lessen the burden on the courts created by endless postconviction proceedings. *See Tillett v. Warden of the Md. House of Correction,* 220 Md. 677, 679, 154 A.2d 808, 810 (1959) (Discussing the predecessor to the current postconviction statutes and noting the Legislature's intention "to put a stop to the endless repetition of the same grounds of collateral attack upon convictions. Repeated petitions for writs of *habeas corpus* became such an abuse as to call for legislation which began in 1941.").

In addition to the historical development of the UPPA, a review of the statutory context within which § 7–104 is located supports our holding. Section 7–108 provides, in pertinent part,

(a) *In general.*—Except as provided in subsection (b) of this section, a person is entitled to assistance of counsel and a hearing on a petition filed under this title.

(b) *Exceptions.*—(1) If a person seeks to reopen a postconviction proceeding under § 7–104 of this subtitle, the court shall determine whether assistance from counsel or a hearing should be granted.

Md.Code (2001), § 7–108(a)–(b) 1 of the Criminal Procedure Article.[5]

The Legislature has treated petitions to reopen with less formality than petitions for postconviction relief, with respect to the rights to counsel and to a hearing. Consequently, it is logical to conclude that a petition to reopen may be treated less formally than a petition for postconviction relief, regarding what a court must do in explicating its ruling on such a petition. The logic of this reasoning is particularly strong in view of the fact that the "right" to have the court provide a detailed statement is not as significant as the right to counsel or the right to a hearing.

Citing *Pfoff v. State,* 85 Md.App. 296, 583 A.2d 1097 (1991), Gray argues that a petition to reopen is the "functional substitute" for the former right to a second postconviction petition, and, as such, the court is required to treat it as a petition for postconviction for the purposes of issuing a "meaningful" statement in support of the court's decision on the matter. In *Pfoff,* the Court of Special Appeals discussed the requirements of postconviction proceedings existing at the time, and noted that the petitioner was limited to two petitions

---

**5.** In addition, in keeping with § 7–108, Md. Rule 4–406(a) provides:

A hearing shall be held promptly on a petition under the [UPPA] unless the parties stipulate that the facts stated in the petition are true and that the facts and applicable law justify the granting of relief. If a defendant requests that the court reopen a postconviction proceeding that was previously concluded, the court shall determine whether a hearing will be held, but it may not reopen the proceeding or grant the relief requested without a hearing unless the parties stipulate that the facts stated in the petition are true and that the facts and applicable law justify the granting of relief.

arising from the same trial. *Pfoff,* 85 Md.App. at 302, 583 A.2d at 1100.

The court also noted that Md. Rule 4–406(a) did not require a hearing for a second petition. *Id.* Nonetheless, the court noted that a judge's responsibility under Md. Rule 4–407(a) was to issue a detailed statement to resolve the second petition for postconviction relief. *Pfoff,* 85 Md.App. at 303, 583 A.2d at 1101. Gray argues that those same requirements should be imposed on the court regarding petitions to reopen because, when the law permitted two postconviction petitions, the court did not have to grant a hearing on the second petition but still had to prepare the statement in accordance with Md. Rule 4–407(a). Gray's reliance on *Pfoff* is misplaced. The court in *Pfoff* did not apply Md. Rule 4–407(a) to a petition to reopen and, for that reason alone, the case is distinguishable. Moreover, the law on postconviction relief has changed since *Pfoff.* Petitioners no longer have a right to more than one petition for postconviction relief.

If a petition to reopen was the "functional substitute" of the former right to a second postconviction petition, the Legislature would not have required assistance of counsel and a hearing for the postconviction petition and then expressly removed or nullified the court's discretion to decide whether a person should receive those rights in the case of a petition to reopen. Additionally, if a petition to reopen was the "functional substitute" of a petition for postconviction relief, § 7–103, which states that "[f]or each trial or sentence, a person may file *only* one petition for relief under this title," would be rendered meaningless. Md.Code. (2001), § 7–103 of the Criminal Procedure Article (emphasis added). If the Legislature intended for defendants to retain a right to a second postconviction petition, it would not have changed the law to take away that right. Finally, unlike § 7–103, § 7–104 does not prohibit a person from filing more than one petition to reopen.[6] As noted by the Court of Special Appeals in *Gray,* "if

---

6. In addition, the statute does not specify when a defendant must file a petition to reopen, unlike petitions for postconviction relief in non-

each request to reopen a closed proceeding required an in-depth assessment as to each of the issues upon which the petition was based, the effect would be an unlimited number of postconviction proceedings disguised as requests to reopen the proceeding." *Gray v. State,* 158 Md.App. 635, 644–45, 857 A.2d 1176, 1181 (2004).

There is no question that Md. Rule 4–407(a) applies to initial postconviction proceedings. *See Davis v. State,* 285 Md. 19, 400 A.2d 406 (1979) (holding that Rule BK45(b), the predecessor to Md. Rule 4–407, requires judges in postconviction proceedings to "make findings of fact as to every claim" in order to avoid a remand); *Wilson v. State,* 284 Md. 664, 399 A.2d 256 (1979) (holding that the court's order resolving an initial petition filed under the UPPA must comply with Md. Rule BK45(b)); *Farrell v. Warden of Md. Penitentiary,* 241 Md. 46, 215 A.2d 218 (1965) (remanding a postconviction proceeding for findings of fact in accordance with Rule BK45(b)). We have not, however, found a case in which the rule has been applied to petitions to reopen.

Gray also relies on *Stovall v. State,* 144 Md.App. 711, 800 A.2d 31, *cert. denied,* 371 Md. 71, 806 A.2d 681 (2002). In *Stovall,* the Court of Special Appeals held that a postconviction petitioner,

(1) is entitled to the effective assistance of postconviction counsel, and (2) has a right to reopen a postconviction proceeding by asserting facts that—if proven to be true at a subsequent hearing—establish that postconviction relief would have been granted but for the ineffective assistance of the petitioner's postconviction counsel.

*Stovall,* 144 Md.App. at 715–16, 800 A.2d at 34. Gray argues that the "right" to reopen because of ineffective postconviction counsel will "ring hollow without the concomitant requirement that the circuit judge render a meaningful statement as to these issues that could not have been raised in the initial

death penalty cases, which have a 10-year filing period, "unless extraordinary cause is shown." Md.Code (2001), § 7-103(b) of the Criminal Procedure Article.

postconviction petition." We disagree. *Stovall* is distinguishable from the present case. *Stovall* does not address whether the court must provide a detailed statement similar to the one required under Md. Rule 4–407(a) when resolving a petition for postconviction relief. Furthermore, in view of § 7–104, we are not persuaded that the right to effective postconviction counsel will "ring hollow" if the decision to write a detailed statement or a simple order in response to a petition to reopen is left to the sound discretion of the trial judge.

We think it necessary to mention that insofar as *Stovall* could be misinterpreted to *require* a trial court to reopen a postconviction proceeding any time a defendant alleges that his postconviction counsel was ineffective, we reject such an interpretation. As explained in this opinion, the Legislature has left it within the court's discretion to decide whether a person seeking to reopen a postconviction proceeding should receive counsel or a hearing. Moreover, the Legislature has left it within the trial court's discretion to decide, in the interests of justice, if a postconviction proceeding should be reopened. *Stovall* should not be read to remove discretion from the trial court in those instances.

## II.

Having discussed what § 7–104 does *not* require, we now turn our attention to what it does require. Section 7–104 requires the court to exercise discretion when ruling on a petition to reopen a postconviction proceeding. The requirement to exercise discretion prevents the court from acting arbitrarily. "The court *may* reopen a postconviction proceeding that was previously concluded *if the court determines* that the action is in the interests of justice." [7] Md.Code (2001),

---

7. The phrase "interests of justice" has been interpreted to include a wide array of possibilities. *See Love v. State,* 95 Md.App. 420, 427, 621 A.2d 910, 914 (1993) (mentioning a long list of reasons for granting a new trial in the interests of justice). While it is within the trial court's discretion to decide when "the interests of justice" require reopening, we note that some reasons for reopening could include, for example, ineffective assistance of postconviction counsel or a change made in the

§ 7–104 of the Criminal Procedure Article (emphasis added).[8] Because the court has discretion to determine if a postconviction proceeding should be reopened, it follows that the court also has discretion to determine how detailed a statement will be given in response to any such petition.

We will only reverse a trial court's discretionary act if we find that the court has abused its discretion. As noted by this Court in *Dehn v. Edgecombe*, 384 Md. 606, 865 A.2d 603 (2005):

" 'Abuse of discretion' is one of those very general, amorphous terms that appellate courts use and apply with great frequency but which they have defined in many different ways.... [A] ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable. That kind of distance can arise in a number of ways, among which are that the ruling either does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective. That, we think,

---

law that should be applied retroactively. *See Oken v. State*, 367 Md. 191, 195, 786 A.2d 691, 693 (2001) (noting Oken's motion to reopen a postconviction proceeding on the basis that the Supreme Court's opinion in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) rendered his sentencing proceeding invalid); *see Harris v. State*, 160 Md.App. 78, 862 A.2d 516 (discussing the defendant's motion to reopen postconviction proceeding on the ground that he had ineffective assistance of postconviction counsel, in addition to ineffective assistance of trial and appellate counsel); *Stovall*, 144 Md. App. at 715, 800 A.2d at 34 (holding that a defendant may petition to reopen a postconviction proceeding if postconviction counsel was ineffective).

8. Also, as previously noted, Md. Rule 4–406(a) requires the court to hold a hearing on a petition for postconviction relief but gives the court discretion regarding petitions to reopen. "If a defendant requests that the court reopen a postconviction proceeding that was previously concluded, the court shall determine *whether a hearing will be held....* " (Emphasis added.)

is included within the notion of 'untenable grounds,' 'violative of fact and logic,' and 'against the logic and effect of facts and inferences before the court.' "

*Dehn v. Edgecombe,* 384 Md. at 628, 865 A.2d at 616 (quoting *North v. North,* 102 Md.App. 1, 13–14, 648 A.2d 1025, 1031–1032 (1994)).

In the Order denying the petition to reopen, Judge Gordy specifically noted that he had "reviewed and considered the matters submitted by both counsel as well as the postconviction proceedings relevant hereto." He then found that it was "not in the interest of justice" to reopen the proceedings. That brief statement, when considered along with the record of this case, was enough to inform the parties and the appellate courts of the reasons for Judge Gordy's decision. As noted in *Williams v. State,* 344 Md. 358, 371, 686 A.2d 1096, 1102–03 (1996), "[t]here is no requirement that the trial court's exercise of discretion be detailed for the record, so long as the record reflects that the discretion was in fact exercised." As a result, we cannot say that Judge Gordy abused his discretion by writing the brief Order denying Gray's petition.

Turning briefly to the merits of the petition to reopen, we note that it was not an abuse of discretion to refuse to reopen the postconviction proceeding in this case. It was not "violative of fact and logic" for the trial court to conclude, as it obviously did, that even if Gray's postconviction counsel had asked Riddic if McCray was on the porch during the shooting, Riddic's answer would not have changed the outcome of the initial postconviction hearing. Riddic's testimony would only have raised a credibility issue between McCray and Riddic. Credibility of a witness is ordinarily not reviewable in a postconviction proceeding. *Walls v. Warden, Maryland Penitentiary,* 242 Md. 401, 404, 219 A.2d 6, 7 (1966).

As for McCray's recantation itself, we note that it occurred after the death of McCray's friend Shauna, the person who allegedly told McCray that she had seen Gray with a gun. In addition, there is no indication that the officer who obtained McCray's testimony believed it to be false or

that the State knowingly used false testimony at trial. The allegation that perjured testimony was offered at trial, "absent a showing that the State knowingly used perjured testimony," is not a ground for postconviction relief. *Fisher v. Warden of Md. House of Correction,* 225 Md. 642, 643, 171 A.2d 731, 731 (1961). As a result, it was not an abuse of discretion for the court to conclude that McCray's new statement did not present a reason, "in the interests of justice," to reopen the postconviction proceedings.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**