723 A.2d 490

**Charles A. MASLIN, III**

v.

**STATE of Maryland.**

**No. 305, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 27, 1999.

Melissa M. Moore, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

David J. Taube, Staff Atty. (J. Joseph Curran, Jr., Atty. Gen., Emmet Davitt, Asst. Atty. Gen., Baltimore, and Joseph I. Cassily, State's Atty. for Harford County of Bel Air, on the brief), for appellee.

Argued before EYLER, SONNER and BYRNES, JJ.

SONNER, Judge.

This case is an appeal from the Circuit Court for Harford County where a jury convicted appellant of various counts of sexual offenses and child abuse.

James Waters testified that between 1980 and 1984 or 1985, appellant, Charles A. Maslin, III, subjected him to a continuous pattern of sexual abuse. When Waters was nine years old, he and his mother moved into the home of Molly Maslin, appellant's mother and Waters's horse riding instructor. According to Waters, the first incident of sexual abuse took place in 1980 when Waters spent a night in appellant's trailer during the Washington International Horse Show. Waters testified that, on that night, appellant, then 23 years old, performed oral sex on him. Appellant informed Waters that he would no longer be allowed to ride horses or live in his mother's house if he told anyone about the incident. Fearing appellant's threats, Waters did not tell his mother or anyone else about the encounter in the trailer. Following the incident at the Washington International Horse Show, numerous other encounters with appellant took place in, among other places, appellant's bedroom, night clubs, and the horse stable. Waters testified that most of these encounters were accompanied by alcohol and drug use.

Waters and his mother moved out of appellant's home in 1987 when Waters started attending Harford Community

College, and there were no more sexual encounters with appellant until an incident that occurred in Killington, Vermont in 1992. This encounter, which occurred in an elevator, saw appellant grope Waters and make references to the "good times" they had experienced years ago.

In subsequent years, Waters turned to drugs and attempted suicide. After checking into the Hiddenbrook Rehabilitation Center in Bel Air, Waters told counselors there about his history of sexual abuse, and they, in turn, informed the police and Child Advocacy Center, an organization that protects the interests of sexually and physically abused children. The police proposed that Waters wear a body wire and engage appellant in conversation about their past sexual encounters, and Waters agreed. During the taped conversation, which took place in appellant's home, appellant hugged and attempted to kiss Waters.

The State's Attorney for Harford County charged appellant with two counts of second degree sexual offense, one count of third degree sexual offense, and child abuse. Prior to trial, the State filed a motion *in limine* to preclude any testimony regarding a pending $1.6 million civil lawsuit, which Waters had filed as a result of appellant's conduct during the taped conversation. The following exchange took place between the court and appellant's counsel during arguments on the motion:

THE COURT: But how is the civil suit relevant? And don't spend a whole lot of time ... because I can't see how it is.

[APPELLANT'S COUNSEL:] Because he's suing him for $1.6 million, and I think the question becomes: What is his reason for coming forward and getting involved in this situation? Who's going to make the call as to whether he's come forward and making these allegations and doing these things for purposes of $1.6 million later on down the line, when its the exact same testimony that has to be used here to pursue this case.

Again, he waits 20 years, to a point in time when Mr. Maslin publicly is enjoying professional and political success,

everyone knows it, and that's when he comes forward, and he brings this suit for $1.6 million as a result of this so-called investigation to begin with. I think in light of the fact that he has a Sixth Amendment right to show any kind of interest this man may have in testifying today, or whenever he testifies as to what he said happened, when that is the same kind of evidence that's going to be used to gain him $1.6 million, is certainly relevant, and it—

[THE COURT:] That motion is granted. What else do you have?

Appellant did not proffer any evidence on the civil lawsuit during the course of the criminal proceedings.

At trial, appellant admitted that he had numerous sexual encounters with Waters, but claimed that the incidents started in 1984 when Waters was fifteen years old. Appellant testified that the encounters could not have started in 1980 as Waters maintained because he was working in Florida at that time. Appellant's counsel attempted to introduce a notarized copy of the trailer's Statement of Origin to demonstrate that the vehicle was built in 1982, two years after Waters claimed the initial sexual encounter took place. Appellee objected on the grounds that the documentary evidence constituted hearsay, and the court sustained the objection.

A jury in the Circuit Court for Harford County convicted appellant of all charges. On December 9, 1997, the court imposed concurrent sentences of twenty years, all but fifteen suspended, for the first of the second degree sexual offense convictions, ten years for the third degree sexual offense conviction, and fifteen years for the child abuse conviction. A twenty-year sentence for the second conviction for second degree sexual offense was suspended. Further, the court ordered appellant, as a condition of probation, to register as a Child Sexual Offender pursuant to Article 27, § 792 of the Maryland Code.

Appellant, on December 16, 1997, noted this timely appeal. He raises the following issues, which we have restated slightly:

I. Did the court err in precluding evidence about Waters's civil lawsuit?

II. Did the court commit error in prohibiting appellant from introducing documentary evidence demonstrating that appellant's trailer was built in 1982, two years after Waters claimed the initial encounter occurred?

III. Should appellant's convictions for second and third degree sexual offense merge with his conviction for child abuse?

IV. Should the convictions for sexual offenses merge?

V. Did the court err in imposing an illegal condition of probation on appellant?

The lower court committed error with respect to the first and fifth issues and, therefore, we reverse and remand.

It is appellant's contention that the court erred in granting appellee's motion *in limine* prohibiting evidence on Waters's civil lawsuit. Specifically, appellant argues that the court's ruling violated his right to cross-examine adverse witnesses protected by the Sixth Amendment.

Before addressing the merits of appellant's contention, we must initially determine whether the issue is preserved for our review.

In *Prout v. State*, 311 Md. 348, 535 A.2d 445 (1988), the Court of Appeals confronted the question of whether a motion *in limine*, in and of itself, is sufficient to preserve for appellate review those issues raised before trial. The Court held that the resolution of this matter depends upon whether the trial court grants or denies the motion. If the trial court admits the disputed evidence, the party who made the motion must object at the time the evidence is actually offered in order to preserve the issue for appellate review. *Prout*, 311 Md. at 356, 535 A.2d 445. However, when the trial court determines not to admit the questionable evidence, and directs the proponent of the evidence not to proffer it during trial, the proponent of the evidence has no recourse at trial but to abide by the court's instructions. *Id.* Under these circumstances,

the proponent preserved the issue for appellate review without any further action on his part. *Id.*

We now turn to the substantive question of whether the court committed error in granting appellee's motion *in limine* prohibiting any reference to Waters's pending civil lawsuit against appellant.

The Sixth and Fourteenth Amendments to the United States Constitution and Article 21 of the Maryland Declaration of Rights afford criminal defendants the right to cross-examine adverse witnesses. *Merzbacher v. State*, 346 Md. 391, 412, 697 A.2d 432 (1997)(citing to *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)). Implicit in this constitutional guarantee is the right to impeach the credibility of adverse witnesses by establishing bias, prejudice, a motive to testify falsely, or an interest in the outcome of the proceeding. Md. Rule 5–616(a)(4). Courts provide cross-examiners with wide latitude to establish bias or motive of a witness. *Ebb v. State*, 341 Md. 578, 587, 671 A.2d 974 (1996). Specifically, "the cross-examiner must be given latitude to cross-examine a witness concerning any bias or interest the witness may have that would lead the witness to shade his testimony, whether consciously or not, in favor of or against a party." *Ware v. State*, 348 Md. 19, 67, 702 A.2d 699 (1997).

Turning to the facts of the present dispute, the evidence of the civil lawsuit was relevant to establish a potential source of bias, as well as a motive to testify falsely. A jury may find that the mere filing of the lawsuit reveals that Waters has feelings of animosity towards appellant. Moreover, a jury could consider the pending $1.6 million lawsuit as evidence that Waters had a significant financial stake in the outcome of the criminal proceedings. The court committed reversible error in precluding appellant from bringing a potential source of bias and motivation to the jury's attention.

Furthermore, the record discloses that the civil lawsuit arose in the context of a police investigation into Waters's allegations of sexual abuse. Waters was not suing appellant for any of the injuries he alleged arose out of the incidents

that supported the criminal charges, since those occurred during a period that would bar them by the statute of limitations.[1] Specifically, Waters alleges that appellant committed battery when he hugged him at the conclusion of their recorded meeting.

To prevail on a civil battery action in Maryland, the plaintiff must demonstrate that the defendant intended to cause a harmful or offensive contact. *Janelsins v. Button,* 102 Md.App. 30, 35, 648 A.2d 1039 (1994). A normal hug, without more, does not constitute battery. However, once a plaintiff establishes a history of sexual abuse at the hands of a defendant, a hug becomes considerably more offensive and, consequently, the chances of prevailing on a battery action increase accordingly. Therefore, for Waters to be successful in his lawsuit, he must testify about the prior sexual conduct that formed the basis of the criminal charges against appellant. This means that Waters's civil lawsuit is closely related to the criminal charges against appellant and, thus, the court erred in granting the motion *in limine.*

The lower court also committed error by requiring appellant to register as a child sexual offender, pursuant to Article 27, § 792 of the Annotated Code of Maryland (1957). In Acts 1997, ch. 754, § A, the legislature stated its intent regarding its application:

> ... this Act shall be construed only prospectively to apply to offenses that are committed on or after July 1, 1997, and may not be applied or interpreted to have any effect on or application to any individual who commits an offense before July 1, 1997.

Every criminal act in the present dispute occurred prior to the effective date of the provision and, accordingly, the condition of probation is contrary to the clear intent of the legislature. *See Spielman v. State,* 298 Md. 602, 471 A.2d 730 (1984). The court exceeded its authority by imposing a condition of probation on appellant that the statute explicitly prohibited.

---

1.  MD. ANN.CODE, [CTS. & JUD. PROC.] § 5–201 (1998).

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR HARFORD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY HARFORD COUNTY.