5 A.3d 1103

**Kenneth BARNES**

v.

**STATE of Maryland.**

**No. 1112, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Sept. 20, 2010.

2

Booth M. Ripke (Nathans & Biddles LLP, on the brief) Baltimore, MD, for appellant.

Ryan R. Dietrich (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: WRIGHT, DAVIS, ARRIE W.,* and JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.

WRIGHT, J.

Appellant, Kenneth Barnes, seeks review of the Circuit Court for Baltimore City's denial of his motion to correct an illegal sentence ("Motion"). The Motion, which was filed on March 30, 2009, involved two cases and was decided jointly by a single order. The first case pertained to Barnes's August 31, 1998 conviction for third degree sexual offense committed in 1996, and the second case pertained to his August 19, 2005 conviction for failing to timely notify the sex offender registry of an address change. On June 15, 2009, without holding a hearing, the court issued an order denying Barnes's Motion.

On July 8, 2009, Barnes filed this appeal. In essence, he argues that the circuit court erred in denying his Motion, because "it was illegal to require [him] to register as a child sexual offender based on his 1998 conviction," and "it was illegal to convict and sentence [him] in 2005 of failing to comply with the sex offender registry laws." [1] For the reasons set forth below, we affirm the trial court's decision.

## FACTS & PROCEDURAL HISTORY

By indictment filed on November 22, 1996, Barnes was charged with second-degree rape, assault with intent to commit rape, third-degree sexual offense, fourth-degree sexual offense, and common law assault of a minor under the age of 15. On March 23, 1997, after Barnes was diagnosed with

---

* Arrie W. Davis, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a specially assigned member of this Court.

1. Barnes did not present any questions. Instead, he advanced the following arguments:

    I. The portion of Mr. Barnes'[s] sentence requiring him to register as a child sexual offender is illegal.

    II. The lower court erred by applying Maryland's current sex offender registration laws to Mr. Barnes, instead of the correct law that was applicable at the relevant time.

"bipolar I disorder, manic type" and "schizophrenia affective disorder, bipolar type," the court appointed Barnes's mother as his guardian. On April 8, 1997, Barnes filed a motion for competency determination. After receiving reports from two physicians, the court, on July 15, 1997, found Barnes incompetent and ordered him to be committed to the Department of Health and Mental Hygiene "until such time as it is determined that he is competent to stand trial."

Thereafter, Barnes received in-patient treatment at Spring Grove Hospital Center ("Spring Grove"). On October 17, 1997, Spring Grove informed the court that Barnes was competent to stand trial. On November 19, 1997, he filed another motion for competency determination. On December 1, 1997, the court found Barnes competent and released him from Spring Grove on the condition that he reside with his guardian.

Trial was held on August 31, 1998, at which time Barnes entered an *Alford* plea[2] on the single count of third-degree sexual offense. The court accepted the plea, and the State entered a *nolle prosequi* on the remaining charges. Barnes was subsequently sentenced to ten years incarceration, all suspended, and four years of supervised probation.

After his 1998 conviction, Barnes was required by the Maryland Division of Parole and Probation to register as a child sexual offender. The parties to this appeal agree that such requirement was not included in the sentence imposed by

---

**2.** " '[A]n *Alford* plea [is] a specialized type of guilty plea where the defendant, although pleading guilty, continues to deny his or her guilt, but enters the plea to avoid the threat of greater punishment.' " *Rios v. State,* 186 Md.App. 354, 369 n. 1, 974 A.2d 366 (2009) (quoting *Ward v. State,* 83 Md.App. 474, 478, 575 A.2d 771 (1990)) (emphasis omitted). The term stems from the case, *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), where the United States Supreme Court held that "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37, 91 S.Ct. 160; *accord Rudman v. Md. State Bd. of Physicians,* 414 Md. 243, 245 n. 1, 994 A.2d 985 (2010).

the court. Nonetheless, Barnes complied with the request to register.

In 2005, Barnes was charged, in part, with failing to notify the sex offender registry of a change in his address. On August 19, 2005, he was convicted and sentenced to three years in prison, all suspended. Barnes was placed on probation, with instructions to "continue therapy at University Hospital," refrain from having "unsupervised contact with any one under 18 years of age," and complete "sex offender counseling." Just over two months later, on October 28, 2005, Barnes was arrested on an allegation of violation of probation, and was subsequently found guilty. On December 12, 2005, he was sentenced to the remainder of the three-year sentence imposed in August 2005, for a total of two years, seven months, and 26 days with the Division of Correction ("DOC"). Barnes was also ordered to pay $165.00 within six months of his release. On December 20, 2005, the court modified his sentence by recommending that Barnes serve his time at the Patuxent Institution, a correctional mental health center.

Barnes was released from the DOC on May 29, 2008. On March 30, 2009, he filed the Motion, citing both his 1998 and 2005 convictions. The court denied the Motion on June 15, 2009, stating:

On August 31, 1998, ... Kenneth Barnes offered an Alford plea and was found guilty of a third degree sex offense involving a 9 year old girl.... As a child sexual offender defined in [Md.Code (2001), Criminal Procedure Article ("CP")] § 11–701(c)(2), Barnes was required to register every six months, for ten years, pursuant to §§ 11–704 through 707.

On August 19, 2005, ... Barnes pled and was found guilty of failing to register as a sex offender.... Barnes' [sic] statutory obligation to register is computed from his last date of release. Whether a judge orders registration or not, the requirement to register pursuant [to] §§ 11–704 through 707 is statutorily mandated of a defendant convicted of Third Degree Sex Offense for acts involving a child.

Barnes timely appealed. To date, he is still being required to register as a child sex offender, and he is compliant.

## STANDARD OF REVIEW

When we review a circuit court's order that "involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review." *Gray v. State*, 388 Md. 366, 375, 879 A.2d 1064 (2005) (citations and quotation marks omitted); *accord Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175 (2006). "We interpret the Md. Rules under the same standard of review." *Gray, supra*, 388 Md. at 375, 879 A.2d 1064 (citing *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78 (2004)).

The issue raised in this case—whether Barnes's sentence is illegal—requires an interpretation of Maryland Rule 4–345 (Sentencing–Revisory power of court) and the sex offender registration statute. As such, our review is *de novo*.

## DISCUSSION

Barnes argues that the circuit court erred in denying his Motion because "it was error to require [him] to register" after his 1998 conviction. Specifically, Barnes avers that, under *Maslin v. State*, 124 Md.App. 535, 723 A.2d 490 (1999), the 1997 Act "did not apply retroactively to [his] alleged misconduct in 1996." Barnes further contends that, "for these same reasons, [his] conviction and sentence for the 2005 registry violation are also illegal."

In challenging the appeal, the State presents several arguments. First, the State contends that Barnes's claim is not properly preserved "because a requirement to register as a child sexual offender is not a sentence for purposes of Md. Rule 4–345(a) and thus may not be challenged." Alternatively, the State argues that the claim is "not properly before this Court because it was not raised in or decided by the trial court." Second, the State argues that, even if preserved and properly addressed, the trial court did not err in denying

Barnes's Motion "because he was required to register under the registration statute in effect at the time of his conviction in 1998." Third, the State argues that "the trial court properly found that Barnes's registration requirement was not illegal due to the trial court's failure to order him to register."

## I. The present case is properly before this Court.

■ The Maryland statutory offender statute is not punitive for due process and Sixth Amendment purposes. *Young v. State*, 138 Md.App. 380, 391, 771 A.2d 525 (2001). "[I]t is instead 'a remedial requirement for the protection of the public.'" *Nguyen v. State*, 189 Md.App. 501, 511, 985 A.2d 87 (2009) (quoting *Young v. State*, 370 Md. 686, 716, 806 A.2d 233 (2002)). Stated differently, a requirement to register as a "child sexual offender" is statutory, *see Graves v. State*, 364 Md. 329, 343, 772 A.2d 1225 (2001), and it is often imposed as a "condition of probation." *See, e.g., State v. Duran*, 407 Md. 532, 545, 967 A.2d 184 (2009); *Cain v. State*, 386 Md. 320, 340, 872 A.2d 681 (2005); *State v. Snowden*, 385 Md. 64, 74 n. 8, 867 A.2d 314 (2005). Probation, in turn, constitutes a "sentence." *Snowden, supra*, 385 Md. at 74 n. 8, 867 A.2d 314. Thus, a requirement to register as a condition of probation is a condition of a sentence.[3]

Regardless of whether the requirement to register is, by itself, a "sentence," the two-year, seven-month, and 26–day imprisonment imposed by the court upon Barnes following his 2005 conviction certainly was a "sentence." In filing his Motion, Barnes challenged that prison sentence, and argued that it should never have been imposed. Contrary to the State's assertion, therefore, the issue is properly before this Court because it was raised in or decided by the trial court, albeit indirectly. *See State v. Wilkins*, 393 Md. 269, 273–74, 900 A.2d 765 (2006) ("a motion to correct an illegal sentence

---

3. In so concluding, we are not stating that the requirement to register is, by law, a "sentence." Rather, we recognize Barnes's contention as a valid challenge, as will be explained in the remaining paragraphs of this section.

can be granted ... where no sentence should have been imposed") (citation omitted). The circuit court's denial of Barnes's Motion triggered his right to appellate review.

Without citing any support, the State contends that Barnes cannot now challenge his 2005 conviction and the resulting prison sentence "because he pled guilty to the violation, and thus waived his right to appeal from that conviction." The State also argues that Barnes's claim is "not properly before this Court because he failed to raise in the trial court the argument that he makes now on appeal." The State's contentions, however, are contrary to Maryland Rule 4–345, which provides that "[t]he court may correct an illegal sentence at any time," where there is "fraud, mistake, or irregularity."

We previously explained the scope of Rule 4–345(a) as follows:

"The scope of this privilege, allowing collateral and belated attacks on the sentence and excluding waiver as a bar to relief, is narrow.... We have consistently defined this category of 'illegal sentence' as limited to those situations in which the illegality inheres in the sentence itself; i.e., there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed and, for either reason, is intrinsically and substantively unlawful. *See Evans v. State*, 389 Md. 456, 463, 886 A.2d 562, 565 (2005); *Baker v. State*, 389 Md. 127, 133, 883 A.2d 916, 919 (2005); *Randall Book Corp. v. State*, 316 Md. 315, 321–23, 558 A.2d 715, 718–19 (1989). As we made clear in *Randall Book Corp.*, any other deficiency in the sentence that may be grounds for an appellate court to vacate it—impermissible considerations in imposing it, for example—must ordinarily be raised in or decided by the trial court and presented for appellate review in a timely-filed direct appeal. The sentence may not be attacked belatedly and collaterally through a motion under Rule 4–345(a), and, subject to the appellate court's discretion under Maryland Rule 8–131(a), the defendant is not excused from having to raise a timely objection in the trial court."

*Ingram v. State,* 179 Md.App. 485, 510–11, 947 A.2d 74 (2008) (quoting *Chaney v. State,* 397 Md. 460, 466–67, 918 A.2d 506 (2007)) (emphasis omitted). *See also Pollard v. State,* 394 Md. 40, 47, 904 A.2d 500 (2006); *Wilkins, supra,* 393 Md. at 284, 900 A.2d 765.

In his brief, Barnes alleges that the circuit court erred in sentencing him to prison for violating a condition of probation that should never have been imposed. Stated differently, Barnes claims that he was subjected to an illegal sentence because he should never have been required to register in the first place. Because this alleged illegality inheres in the sentence itself, we have the authority to entertain Barnes's appeal under Rule 4–345.

## II. Barnes was required to register under the registration statute in effect at the time of his 1998 conviction.

Barnes asserts that he is "currently serving an illegal sentence because he is incorrectly and illegally being forced . . . to register as a child sexual offender." According to Barnes, the law under which he was convicted in 1998 "did not require him to register as a sex offender" and, therefore, "it was illegal to sentence him for not complying with those registration requirements" in 2005. To address Barnes's contentions, we begin our analysis with a comprehensive review of the history of the sex offender registration scheme in Maryland.

In 1994, the United States Congress passed The Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("Wetterling Act"), Pub.L. No. 103–322, 108 Stat.2038 (codified as amended at 42 U.S.C. § 14071 (1995)). "The Wetterling Act established guidelines for registering sex offenders and providing notification for persons convicted of sexually violent offenses or criminal offenses against minors, or who were determined to be sexually violent predators." *Graves, supra,* 364 Md. at 337 n. 10, 772 A.2d 1225 (citation omitted). Under the Wetterling Act, "[e]ach state had until September 13, 1997, to enact legislation implementing a sex offender registration statute in accordance with

the guidelines set forth in the Federal Act, or risk losing federal funding apportioned to the states for crime fighting programs." *Id.* (citation omitted).

In 1995, the Maryland General Assembly passed legislation "requiring child sex offenders to register with local law enforcement." Ranak K. Jasani, *Note*, 61 Md. L.Rev. 739, 742 (2002) (citation omitted). The statute, "originally entitled 'The Maryland Crimes Against Children and Sexual Offender Registration Law,' was enacted as Chapter 142, of the 1995 Laws of Maryland," *Graves, supra*, 364 Md. at 336–37, 772 A.2d 1225 (citation omitted), and codified at Maryland Annotated Code, Article 27 ("Art. 27"), (1996 Supp.), § 792.[4]

In 1996, when Barnes was first charged, Maryland's sex offender registration law ("1995 Act") had "two main requirements: (1) child sex offender registration, and (2) limited public notification." Jasani, *supra*, 61 Md. L.Rev. at 744 (citations omitted). Specifically, the 1995 Act required every "child sexual offender," who was a "resident" of Maryland, to register.[5] Art. 27, (1996 Supp.), § 792(a)-(c). This included

---

**4.** Although the Act was enacted in 1995, it did not appear in the printed version of the Code until the 1996 Supplement.

**5.** According to the 1995 Act:
  (1) Registration shall consist of a statement signed by a child sexual offender which shall include:
  (i) The child sexual offender's name, address, and place of employment;
  (ii) A description of the crime for which the child sexual offender was convicted, granted probation before judgment, or found not criminally responsible;
  (iii) The date that the child sexual offender was convicted, granted probation before judgment, or found not criminally responsible;
  (iv) The jurisdiction in which the child sexual offender was convicted, granted probation before judgment, or found not criminally responsible;
  (v) A list of any aliases that have been used by the child sexual offender; and
  (vi) The child sexual offender's Social Security number.
  (2) The local law enforcement agency shall obtain a photograph and fingerprints of the child sexual offender and include copies of each photograph and fingerprints in the registration statement.
  Art. 27, (1996 Supp.), § 792(g).

individuals who had "been convicted of violating any of the provisions of §§ 462 through 464B [6] of this article for an offense involving an individual under the age of 15 years." Art. 27, (1996 Supp.), § 792(a)(2)(ii).

The 1995 Act also required that any child sexual offender provide written notice of any change in his or her address. Art. 27, (1996 Supp.), § 792(h). A child sexual offender, who knowingly failed to register as required by the 1995 Act, was deemed "guilty of a misdemeanor and on conviction [was] subject to imprisonment in the penitentiary for not more than 3 years or a fine of not more than $5,000 or both." Art. 27, (1996 Supp.), § 792(k). The Maryland General Assembly, however, specified that the 1995 Act applied only "prospectively to offenders convicted of offenses occurring after October 1, 1995." Gregory G. Gillette, *The Maryland Survey: 1994–1995,* 55 Md. L.Rev. 847, 847 (1996) (citing Md. Ann.Code, Art. 27, 692B (1995)); *see also* Editor's note, Art. 27, (1996 Supp.), § 792. As noted above, the conduct for which Barnes was convicted occurred in 1996.

"In 1997, the General Assembly enacted a more expansive sexual offender registration statute." *Graves, supra,* 364 Md. at 338, 772 A.2d 1225. In sum:

> The provisions of the 1995 Act were incorporated and reworked into the 1997 law, as codified in Art. 27, § 792 [ ("1997 Act") ]. The 1997 version of § 792, which originated as Senate Bill 605, passed by an unanimous vote of the Senate's Judicial Proceedings Committee on March 20, 1997. The final version of Senate Bill 605 was approved on May 22, 1997, and went into effect on October 1, 1997.

*Id.* at 338, 772 A.2d 1225 (citing 1997 Md. Laws, ch. 754) (footnotes omitted). The 1997 Act expanded the class of individuals required to register, to include not only "child sexual offenders," but also "offenders," "sexually violent offenders,"

---

**6.** Barnes does not dispute that, in 1998, he was convicted of a third-degree sexual offense, then codified at Maryland Annotated Code, Article 27, § 464B, involving an individual under the age of 15.

and "sexually violent predators." Art. 27, (1997 Supp.), § 792(a)(7).

Although the 1997 Act was expanded to include other types of registrants, it did not substantively expand the duties of a child sexual offender, as set forth in the previous 1995 Act. For example, both versions required child sexual offenders to register within 7 days of being released, and to inform the local law enforcement agency of an address change within 7 days. *Compare* Art. 27, (1996 Supp.), § 792(c)(2) *with* Art. 27, (1997 Supp.), § 792(c)(3), *and* Art. 27, (1996 Supp.), § 792(h)(1) *with* Art. 27, (1997 Supp.), § 792(g)(1). Both versions also required child sexual offenders to register annually for 10 years after the last date of release. *See* Art. 27, (1996 Supp.), § 792(i); Art. 27, (1997 Supp.), § 792(h). Moreover, the 1995 and 1997 Acts listed identical requirements regarding information to be provided by child sexual offenders upon registration, and both versions listed the same penalties for noncompliance. *See* Art. 27, (1996 Supp.), § 792(g),(k); Art. 27, (1997 Supp.), § 792(d)(m).

In addition, the Editor's note to the 1997 Act stated:

Section 4, ch. 754, Acts 1997, provides that "except as provided in §§ 5 and 6 of this Act, this Act shall be construed only prospectively to apply to offenses that are committed on or after July 1, 1997, and may not be applied or interpreted to have any effect on or application to any individual who commits an offense before July 1, 1997."

Section 5, ch. 754, Acts 1997, provides that "a child sexual offender who is subject to the requirements of Chapter 142 of the Acts of the General Assembly of 1995 and who committed the sexual offense before October 1, 1997, is subject to the requirements of this Act."

Section 6, ch. 754, Acts 1997, provides that "provided that the second or subsequent sexually violent offense occurred on or after October 1, 1997, for purposes of determining whether a person qualifies for determination of sexually violent predator status a conviction for a sexually violent

offense occurring before October 1, 1997 shall be considered a prior offense."

Art. 27, (1997 Supp.), § 792.

Relying on Section 4, Barnes argues that the 1997 Act "applied prospectively, and specifically did not apply to [him]" because he "was alleged to have committed [the child sexual] offense prior to July 1, 1997." Barnes's argument fails, however, because he completely disregards Sections 5 and 6. When Section 4 is read in conjunction with Section 5, it is pellucid that the legislature intended for the registration requirement to apply to all child sexual offenders who were convicted of a child sexual offense committed after October 1, 1995. *See In re Stephen K.,* 289 Md. 294, 298, 424 A.2d 153 (1981) ("the legislative intention must be gathered from the entire statute, rather than from only one part") (citations omitted).

"As we have indicated countless times, the cardinal rule of statutory construction is to ascertain and effectuate the legislative intent." *Id.* (citations omitted). In doing so, we first look to "the language of the statute itself, and where no ambiguity exists there is no need to look beyond the language used to determine the legislative intent." *Id.* (citations omitted). But, when a statute does contain an ambiguity, we may consider " 'the consequences resulting from one meaning rather than another and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.' " *Resper v. State,* 354 Md. 611, 619, 732 A.2d 863 (1999) (quoting *Wynn v. State,* 313 Md. 533, 539, 546 A.2d 465 (1988)) (additional citation omitted).

In this case, Barnes's interpretation of Section 5 as merely a "carve out provision" affecting only individuals who were *convicted* of a child sexual offense between the enactment of the 1995 Act and July 1, 1997, is not only contrary to legislative intent, but also leads to illogical and unreasonable results. There is nothing in our interpretation of the foregoing note that would lead us to conclude that the General Assembly intended to create a child sex offender registry scheme that

applies to all child sex offenders *except* those who committed a sexual offense between October 1, 1995, and June 30, 1997, and, for whatever reason, were not convicted until July 1, 1997, or thereafter.

Indeed, nothing better illustrates the legislature's intent to create a comprehensive registration scheme than its 2001 amendment of the sex offender registration statute, through the enactment of Maryland Code, § 11–702.1 of the Criminal Procedure Article ("CP"), 2001 Md. Laws 221. *See Billman v. State Deposit Ins. Fund Corp.*, 88 Md.App. 79, 105, 593 A.2d 684 (1991) ("a subsequent statute purporting to declare the intent of an earlier one might be of great weight in assisting a court when in doubt") (citations and quotation marks omitted). CP § 11–702.1 states, in relevant part:

(a) *Registrants.*—Notwithstanding any other provision of law to the contrary, except as provided in subsection (b) of this section, this subtitle shall be applied retroactively to include a registrant convicted of an offense committed before July 1, 1997, and who is under the custody or supervision of a supervising authority on October 1, 2001.

(b) *Child sexual offenders.*—Notwithstanding any other provision of law to the contrary, this subtitle shall be applied retroactively to a child sexual offender who committed the sexual offense on or before October 1, 1995, and who is under the custody or supervision of a supervising authority on October 1, 2001.

As its plain language indicates, CP § 11–702.1 expands the scope of the registration statute to include those individuals who committed offenses prior to the enactment of the 1995 and 1997 Acts. It is also worth noting that the statute, as amended, distinguishes "child sexual offenders" from "registrants" with respect to the date of retroactive application. This distinction reflects that, at the time CP § 11–702.1 was enacted in 2001, the statute then in effect (i.e. the 1997 Act) provided that all child sexual offenders convicted of an offense that occurred after October 1, 1995, would be subject to the registration requirements.

The legislature's intent to create a comprehensive registration scheme is further supported by the Fiscal Note that was introduced to the General Assembly, along with House Bill 393, prior to the enactment of CP § 11–702.1. It summarized the application of CP § 11–702.1 to the 1997 Act as follows:

This bill requires State sex offender registration provisions to be applied retroactively if the offender is convicted of an offense committed before July 1, 1997 and is in the custody of a supervising agency on October 1, 2001. Current law requires the registration of: (1) *all child sex offenders convicted on or after October 1, 1995;* and (2) all other sex offenders to whom the registration requirements apply who were convicted on or after July 1, 1997.

Department of Legislative Services, Fiscal Note, HB 393 (2001) (emphasis added). Barnes does not contest that he was alleged to have committed a child sexual offense before July 1, 1997, and more importantly, that he was convicted of such offense after October 1, 1995. It is evident, therefore, that he was subject to registration.

In his brief, Barnes presents no legislative history or analysis to support his limited reading of the Editor's note to the 1997 Act. Barnes relies on *Maslin, supra,* 124 Md.App. at 542, 723 A.2d 490, but that case is inapposite.

In *Maslin,* the appellant was convicted in late 1997 of "various counts of sexual offenses" against a child victim. *Id.* at 537–39, 723 A.2d 490. *All of the offenses occurred prior to 1995. Id.* (Emphasis added). Nonetheless, the trial court "ordered [Maslin], as a condition of probation, to register as a Child Sexual Offender pursuant to Article 27, § 792 of the Maryland Code." *Id.* at 539, 723 A.2d 490. Maslin timely appealed, and we reversed, stating:

The lower court also committed error by requiring appellant to register as a child sexual offender, pursuant to Article 27, § 792 of the Annotated Code of Maryland (1957). In Acts 1997, ch. 754, § A, the legislature stated its intent regarding its application:

> ... this Act shall be construed only prospectively to apply to offenses that are committed on or after July 1, 1997, and may not be applied or interpreted to have any effect on or application to any individual who commits an offense before July 1, 1997.
>
> Every criminal act in the present dispute occurred prior to the effective date of the provision and, accordingly, the condition of probation is contrary to the clear intent of the legislature. *See Spielman v. State*, 298 Md. 602, 471 A.2d 730 (1984). The court exceeded its authority by imposing a condition of probation on appellant that the statute explicitly prohibited.

*Id.* at 542, 723 A.2d 490.

Barnes argues that, "[j]ust as in *Maslin*, in this case the 1997 statute explicitly prohibited the State from applying those sex offender registration requirements." Barnes's argument fails, however, because unlike Maslin, Barnes's alleged offenses occurred *after* the 1995 Act was passed. As we previously explained, the registration scheme in place at the time of Maslin's and Barnes's convictions required all child sex offenders convicted on or after October 1, 1995, *and* who were subject to the requirements of the 1995 Act, to register. We did not require Maslin to register because, although he was convicted in 1997, his alleged offenses took place *prior* to 1995, and therefore, he was not subject to the 1995 Act.[7] Again, we note that Barnes's alleged offenses occurred after October 1, 1995, *and* he was convicted in August 31, 1998. Therefore, Barnes was subject to the requirements of the 1995 Act, and he was properly ordered to register as a child sexual offender.

---

7. We note that, at the present time, Maslin is registered as a child sexual offender, as a result of the crimes set forth in his appellate case. *See* Maryland Department of Public Safety and Correctional Services, Sex Offender Registry, http://www.dpscs.state.md.us/sorSearch/search. do?searchType=byName&anchor=offlist&firstnm=&lastnm=maslin& category=ALL. Thus, to the extent that a gap in the registration scheme existed at the time of Maslin's appeal to this Court, subsequent amendments to the registration statute have since bridged that gap. This is consistent with our conclusion that there were no gaps from the 1995 Act onward.

We conclude that Barnes was subject to the registration statute in effect at the time of his 1998 conviction. As such, the sentence imposed upon him following his 2005 conviction was also lawful.

## III. Registration by individuals convicted of a child sexual offense is required by statute and need not be imposed by the court.

■ Barnes further argues that it was illegal to convict and sentence him for "failing to comply with the sex offender registry laws, because it was never lawfully mandated that he register." The plain language of the registration scheme in effect at the time of his 1998 conviction, however, supports the finding that registration was an automatic consequence of a conviction for a child sex offense regardless of whether Barnes was ordered by the sentencing court to do so. At that time, the registration statute provided:

> Within 7 days after release, a child sexual offender *shall* also register in person with the local law enforcement agency of the county where the offender will reside.

Art. 27, (1997 Supp.), § 792(c)(3)(i) (emphasis added). The 1997 Act defined "child sexual offender" as a person who has been convicted of violating any number of enumerated sexual offenses "involving an individual under the age of 15 years." Art 27, (1997 Supp.), § 792(a)(2)(ii). In addition, "[r]elease" meant "any type of release from the custody of a supervising authority," including "the court that granted the probation or suspended sentence." Art. 27, (1997 Supp.), §§ 792(a)(8)(i) & 792(a)(12)(iii).

Under this statutory scheme, the requirement to register as a child sexual offender is not triggered by a trial court order, but simply by a conviction for child sexual offense. Our conclusion is further supported by the fact that the 1997 Act was expanded to include provisions for other classes of sexual offenders, for whom registration is required only if the court so orders. As previously stated, the 1995 Act required only "child sexual offenders" to register. Art. 27, (1996 Supp.),

§ 792. Meanwhile, the 1997 Act covered four different types of registrants: (1) child sexual offenders; (2) offenders; (3) sexually violent offenders; and (4) sexually violent predators. Art. 27, (1997 Supp.), § 792(a)(7).

In contrast to a child sexual offender, the 1997 Act defined "offender" as "a person who is *ordered by the court to register*" and who has been convicted of an enumerated offense. Art. 27, (1997 Supp.), § 792(a)(6) (emphasis added). The 1997 Act defined "sexually violent predator" as a person who:

(i) Is convicted of a second or subsequent sexually violent offense; and

(ii) *Has been determined* in accordance with this section to be at risk of committing a subsequent sexually violent offense.

Art. 27, (1997 Supp.), § 792(a)(11) (emphasis added). Unlike a child sexual offender, who was automatically required to register following a conviction for a child sexual offense, other types of registrants were required to register only after the court took an additional step.

In recent years, the Court of Appeals has recognized these distinctions. *See, e.g., Sweet v. State,* 371 Md. 1, 6–7, 806 A.2d 265 (2002) (noting that, "[u]nder the statutory framework," the trial court must "engage in a two-step analysis" and make specific findings before requiring an individual to register as a "sexually violent predator"); *Young v. State,* 370 Md. 686, 694 n. 4, 806 A.2d 233 (2002) (noting that "[a]n offender must first be ordered by the court to register") (citation omitted). The same distinction is apparent here. Because the 1997 Act provides that a child sexual offender shall register within a week of having his or her sentence suspended, without the need for any further finding or order of the court, we conclude that Barnes was required to register following his 1998 conviction.

For all of the foregoing reasons, we conclude that the registration requirement imposed upon Barnes is not illegal

and, therefore, the circuit court did not err in denying his motion to correct illegal sentence.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**